**In re Glenda M. POWELL, Debtor.**

**Bankruptcy No. 80–682R.**

United States Bankruptcy Court,
N. D. Georgia,
Rome Division.

Nov. 17, 1981.

Gary Hamilton, Rome, Ga., for debtor.

Clinton J. Morgan, Rome, Ga., for City Bank of Rome.

Harry W. Pettigrew, Pettigrew & Trippe, P.C., Atlanta, Ga., for trustee.

## OPINION

HUGH ROBINSON, Bankruptcy Judge.

This case is on "remand" from an appeal to the District Court by a creditor. That appeal is of this Bankruptcy Court's Order confirming the Debtor's Chapter 13 plan. The remand was for further proceedings by this Bankruptcy Court.

Pursuant to the District Court's Order, this Bankruptcy Court held a hearing on August 26, 1981, and issues this opinion.

To put this opinion in perspective, the pre-remand-hearing procedural history is first reviewed.

## A. PRE–REMAND–HEARING PROCEDURAL HISTORY

The Debtor filed her Chapter 13 case in mid-December, 1980. The Debtor scheduled the Bank as both a secured and unsecured creditor, and the Bank timely filed its proof of claim.

The 341 meeting of creditors took place as scheduled and the Debtor was examined.

The National City Bank of Rome ("Bank") then filed its objection to confirmation of the plan in mid-February, 1981.

At the scheduled hearing on confirmation of the Debtor's plan, this Bankruptcy Judge dismissed the Bank's objection, for failure to appear and prosecute, and entered an order confirming the Debtor's plan.

The Bank filed its appeal from that confirmation order in early March of 1981, naming the Debtor and the Chapter 13 Trustee as appellees. The Bank raised eight issues on appeal.

In response, the Trustee, among other things, moved to strike the Bank's proffered "home-made transcript" of the 341 meeting. Both the Debtor and the Trustee filed briefs responding to the issues briefed by the Bank.

On July 20, 1981, the District Court entered an Order in the appeal. By that order, the case was "remanded to the Bankruptcy Court for the Rome Division for further proceedings not inconsistent with this opinion".

After this remand, the Debtor filed a "Specification of and Modification of the Debtor's Chapter 13 Plan" with the Bankruptcy Court on August 3, 1981. The following day, August 4, 1981, this Bankruptcy Court issued an "Order on Debtor's Plan as Modified Combined with Notice thereof, Notice of Hearing Pursuant to Remand of Appeal from Confirmation Order for Further Proceedings, and Related Matters". That order and notice set a hearing on the Debtor's plan, as specified and modified, on

the elements necessary for confirmation of the Debtor's plan and the modification of same. That order and notice (with the Debtor's specification and modification annexed) was served on all creditors including the Bank. In response, on August 20, 1981, the Bank filed an "Objection to Debtor's Plan as Modified" listing some fourteen grounds. The matter came on for hearing as scheduled.

## B. REMAND HEARING

■ A threshold issue is the propriety of an evidentiary hearing on remand.

The Bank contends that the District Court remanded the case merely for a clarification of the Bankruptcy Court's confirmation order; and, that no testimony· is involved in that clarification process.

The Bankruptcy Court disagrees. An evidentiary hearing on the elements for confirmation is not a proceeding inconsistent with the District Court's remand order.[1] Such a hearing allows for the making of a complete record including that part improperly proffered by the Bank in its "homemade transcript". Furthermore, it reduces the potential for piecemeal litigation on further review.

■ On the same reasoning, the Bankruptcy Court denies the Bank's request to strike the Debtor's post-remand Specification and Modification of the Debtor's plan.

The Debtor's Specification and Modification is allowable under the Code.

For the most part, the Specification and Modification is merely a specification of the Debtor's initial plan filed with her petition. There are no Code restrictions in a debtor specifying aspects of the debtor's initial plan, before or after confirmation, once those specifics become known. There are, however, limitations on the modification of a debtor's plan. 11 U.S.C. §§ 1323 (before confirmation), 1329 (after confirmation).

Since the District Court's order did not vacate the Bankruptcy Court's prior confirmation order, any modification would be tested by § 1329.[2]

The only actual modification of the initial plan is the express provision for 10.5% "discount" and lien retention for a rejecting secured creditor. This modification is allowable under § 1329(a)(1).[3]

## C. ISSUES ON APPEAL AND OBJECTIONS TO SPECIFICATIONS AND MODIFICATIONS

In this opinion, this Bankruptcy Court addresses the remaining issues that have been raised.

### 1. THE NOTICES THE CREDITORS RECEIVED OF THE DEBTOR'S PLAN WERE LEGALLY SUFFICIENT

a. *The initial summary of the plan included in the Order and Notice mailed to creditors fulfilled the requirement of Bankruptcy Rule 13–204(a)*

■ The new Bankruptcy Code provides that the Debtor file a plan. 11 U.S.C. § 1321. Nothing, however, is stated in the new Code or Interim Rules concerning notification to creditors of the content of the Debtor's plan.

The Bankruptcy Rules in effect on October 1, 1979, do provide for such a notification. Specifically, the second sentence of Rule 13–204(a)(1) provides:

---

1. The District Court's order neither mandated nor prohibited an evidentiary hearing. The nature and manner of the "further proceedings" to be held by the Bankruptcy Court are within the discretion of that court so long as not inconsistent with the District Court's order.

2. Of course, if the District Court's order did vacate the prior confirmation order, as the Bank suggests, the modifications would be tested by the more liberal requirements of § 1323.

3. To the extent that the specifications might be viewed as modifications, they also are allowable under § 1329(a)(1). If this Bankruptcy Court had viewed these specifications as modifications, it would be appropriate for the Bankruptcy Court to vacate its prior confirmation order and allow them as modifications under § 1323. This would not be inconsistent with the District Court's order.

A copy or a *summary* of the *last filed plan* and a form of proof of claim containing provision for acceptance or rejection of the plan shall accompany the notice of the meeting [of creditors].

(Emphasis added).

This sentence is not inconsistent with the new Code and therefore fills the procedural gap. (1979 Collier Pamphlet Edition Bankruptcy Rules at 765, 1978 Bankruptcy Code —Comment).

A summary of the Debtor's plan was sent to the Bank and every other creditor in the case at bar. It was contained on the Order and Notice sent to each creditor to notify it of the meeting of creditors.[4]

The information on the Order and Notice initially sent to all creditors, which summarized the Debtor's plan in the case at bar, is as follows:

(a) Five year plan.

(b) The plan proposes payment to the Trustee of $36.00 weekly.

(c) The claims listed by the Debtor are $6,508.48 as secured, none as priority, $1,403.83 as unsecured—giving total debts of $7,912.31.

(d) This claim [of the creditor to which the particular notice was sent] is scheduled as [secured or unsecured as the case may be].

Apparently the Bank is the only creditor in the case at bar which had any problem evaluating the information in the summary.

Upon receiving the notice, the creditor must first examine its own books and records to maximize the information provided in this summary. For example, the Bank,

upon checking its own internal books and records would have determined: 1) this Debtor was indebted to it in the sum of $6,441.26 on three separate accounts, and 2) the Bank was secured to the extent of $4,865.00 on the auto contract, which provides for $157.00 per month payments. The Bank also knows that it must be paid to the extent of its security.

Placing this information with that given by the summary on the Order and Notice, it is obvious that the Debtor's plan will not provide for full contract payments to the Bank—$36.00 per week does not even equal the $157.00 per month contract payments on the automobile contract.

From this, the Bank knows its contract rights are being modified under the Debtor's proposed plan. It also knows, by a quick calculation, that the Debtor's proposed plan provides for payments to the Trustee which are adequate to pay all of the secured and unsecured claims.[5]

Based on this information, the Bank can either accept or reject the Debtor's proposed plan. If it wishes more information, the Bank may review the Debtor's plan on file at the office of the Clerk of Bankruptcy Court in Rome, or write or call the Trustee's office.

If the Bank finds that it needs detailed information before it chooses to accept or reject, it must attend the scheduled meeting of creditors. That is a function of such a meeting.

To properly evaluate this summary, it is helpful to review the proposed plan being summarized.

---

4. The Bank's argument incorrectly focuses on the language in the separate proof of claim which states:

> The Debtor's plan identified below. The plan proposes payment to the Trustee of $36.00 weekly.

The Bank correctly asserts that "[b]y no stretch of the imagination could that be interpreted to be a 'copy or summary' of a Plan". The problem, however, with the Bank's argument is that the quoted words in the proof of claim do not purport to state that the proof of claim contains a summary of the plan. The sentence is, "The Debtor's plan *identified* below"; it is not, "The Debtor's plan summarized

below". This statement on the proof of claim is exactly what it purports to be: an "*identification*" of the Debtor's plan. The Debtor's plan must be identified on the "acceptance". Bankruptcy Rule 13–201(a). The traditional method of identifying one plan of a debtor from any modification is by the amount proposed to be paid to the trustee. This is so, since the amount to be paid to the trustee is the item most often changed.

5. The plan proposes to pay $36.00 a week to the Trustee for 5 years. This is $9,360.00 to fund total scheduled debts of $7,912.31.

A Debtor's plan under new Chapter 13 need only contain two provisions. And, there is one restriction. These mandatory aspects of every Debtor's plan are set out in Section 1322(a) of the Code:

(a) The plan shall—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

(2) provide for full payment in deferred cash payments of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

11 U.S.C. § 1322(a).

Obviously, since this is all that is required to have a Chapter 13 plan, a debtor's proposed plan need not be elaborate.

The Debtor's "Chapter 13 Plan" in the case at bar is not elaborate. It contains the following substantive provisions:

(1) The future earnings of the debtor are submitted to the supervision and control of the trustee and the debtor—debtor's employer shall pay to the trustee the sum of $36.00 weekly.

(2) From the payments so received, the trustee shall make disbursements as follows:

(a) The priority payments required by 11 U.S.C. § 507.

(b) After the above payments, dividends to secured creditors whose claims are duly proved and allowed as follows: 100% of the value of the security claimed.

(c) Subsequent to—pro-rata with dividends to secured creditors, dividends to unsecured creditors whose claims are duly proved and allowed as follows: 100% of the dollar amount of claims filed.

(3) The following executory contracts are rejected:

[None listed]

This is a 4 5 year plan.

The Debtor's plan met the mandatory requirements and provided for a few additional considerations.[6]

The Bank argues, however, that the summary of the plan sent out by the Court must detail the total amount the Bank is to receive, the amount per month the Bank is to receive, the number of monthly payments, etc. It is implausible that it was intended that a "summary" of the plan contain more detail than the actual plan.

There is nothing in any Code section, rule, or official form mandating this precision in the plan, let alone the "summary".

The lack of such a requirement cannot be attributed to congressional inadvertence. Such a requirement would make Chapter 13 unworkable. At the point that the Chapter 13 plan must be filed, precise information generally is not available.

In a Chapter 13 case, unlike a Chapter 11 case, the debtor's plan must be filed at the same time as the Chapter 13 petition or within 10 days thereafter. Bankruptcy Rule 13–201(a).

By comparison, to file a Chapter 11 the debtor need not have any plan formulated. The Chapter 11 debtor is given 120 days to file a plan. 11 U.S.C. § 1121(b).

---

**6.** The preprinted format of the Debtor's plan in the case at bar is a reprint of Official Form No. 13–6: "Chapter XIII Plan".

This official form was approved for use by the United States Supreme Court at the time of that Court's approval of the Bankruptcy Rules. (Bankruptcy Rule 908). This official form is appropriate for use in a new-Code Chapter 13 case so long as it is modified to conform with the requirements of the Code.

At the bottom right of the preprinted-plan format used by the Debtor is the designation "Revised OF 13–6 Chapter 13 Plan 10–79". Clearly, this preprinted format purports to be a revision of Official Form 13–6 to conform to new-Code Chapter 13. A verbatim comparison of Official Form 13–6 and the preprinted form-at at bar substantiates this.

This official-plan form, as filled out by the Debtor, meets the requirements for a Chapter 13 plan.

Chapter 13 petitions, plans and schedules are filed by financially desperate wage earners. These debtors generally have little education, and no financial sophistication. The debtor's counsel generally has some difficulty in accurately determining the names and addresses of all of the creditors by the date of filing. Usually, the date of filing cannot be delayed, since such a delay could deprive the debtor of the benefit of the automatic stay against creditor action. Often the debtor's counsel only is able to obtain a rough approximation of the amount of the debt, and some notion of which creditors might claim a secured status. This, however, is not critical to the operation of Chapter 13, for neither the debtor's schedules, nor the debtor's plan in and of itself determines how much a particular creditor will be paid, which creditor will be treated as secured for the purpose of distribution, or the extent to which a creditor may be secured.

The only creditors to be paid under a Chapter 13 plan are those for which proofs of claim are filed. And the amount of the indebtedness to be paid generally is not the "balance owing" on that creditor's last statement. Except for unusual cases, the proofs of claim may not include a claim for unearned interest. 11 U.S.C. §§ 502(b)(2), 506(b). This usually requires the claimant to compute a proper "payoff" figure after making rebates of precomputed interest. Most retailers and lenders use a computer terminal to compute these amounts. The debtor and the debtor's counsel are hardly in a position to calculate this.

Whether and in what order the creditors will be paid generally is affected by the timeliness of the proof of claim being filed.[7] Whether a given creditor will file a claim timely is unknown to a debtor's counsel at the time of filing the debtor's plan.

To timely file a claim as a secured claimant, the claim must be filed by the conclusion of the 341 meeting. Bankruptcy Rule 13-302(e)(1). In this District, normally the 341 meeting is held approximately 3–4 weeks from the date the petition and plan are filed. Bankruptcy Rule 13-204(a); 11 U.S.C. § 341. But this timely filing only establishes a secured claimant; it does not establish the "extent" of the secured claim. The claim is only secured to the extent of the value of the security. 11 U.S.C. § 506(a)[8]. And, the value of the security is not determined until the confirmation hearing,[9] which normally is held 1–2 weeks after the 341 meeting.

A further complicating matter is that unsecured claimants have 6 months after the 341 meeting to file their proofs of claim. Bankruptcy Rule 13-302(e)(2). Thus, precisely which creditors are to be paid may not be fully known for 6 months.

In order for the debtor's counsel to attempt to make a prefiling determination of how much each creditor is to receive each month for how long, he also must feed into his computations the administrative charges.[10]

If the debtor's counsel's office attempted such pre-filing computations, the cost of a Chapter 13 would be out of reach of low-income consumer debtors. With a dominant congressional purpose of the new-Code being to encourage the use of Chapter 13s for consumer debtors[11] it would be anomolous for Congress to have intended to place the incredible burden on the debtor's bar that the Bank demands.

The Debtor's initial proposed plan in the case at bar avoided these problems. That is why most debtors file this type of plan—not only in the Rome Division, but throughout the Northern District of Georgia and beyond.

---

7. This is different from a Chapter 11. In a Chapter 11, a creditor need not file a proof of claim if the indebtedness is properly scheduled. 11 U.S.C. § 1111(a); Interim Rule 3001(a).

8. The amount of the indebtedness above the value of the security is an unsecured claim. 11 U.S.C. § 506(a).

9. 5 *Collier* ¶ 1324.01[2] at 1324–2 (15th ed.).

10. These administrative charges are those referenced in 11 U.S.C. § 1326(a).

11. 5 *Collier* ¶ 1300.02 at 1300–21 (15th ed).

The Debtor's proposed plan set the framework for distributions to creditors which timely file proper proofs of claim. To the extent the Debtor's plan did not specify matters, those matters were left to the discretion of the Trustee.[12]

The Debtor's plan is stated in short, concise, broadly-worded concepts. The "summary" in the Order and Notice properly reflects a summary of the information in the Debtor's plan.

Surely, the "summary" of the Debtor's plan need not be more elaborate than the plan itself. A "summary" of a plan, by any definition, is an abridgment, brief or compendium of the plan. See e. g., *Black's Law Dictionary* at 1604 (Rev. 4th Ed.). Since there is no requirement that the Debtor's *plan,* as filed, detail precisely how much money is to be paid to each creditor per month over what period, the "summary" of the plan certainly need not include that information.

The Bank also objects to the summary not spelling out the administrative expenses which will be deducted, and that, therefore, creditors will not receive all of the monies paid into the Trustee.

The Code specifies, at section 1326, the priority administrative expenses to be deducted. Hopefully, sophisticated creditors such as the Bank are not under the impression that the taxpayers are supporting their entire free collection service in Chapter 13. Under the Code, the Chapter 13 debtors themselves provide support with a 10% Trustee's fee. 11 U.S.C. §§ 1302; 1326.

Whether a "better" summary could have been provided is not the issue. The issue is whether the summary provided was legally sufficient. This Bankruptcy Court holds that it was.[13]

b. *The creditors received copies of the Specifications and Modifications of the Debtor's Plan*

Upon remand, the Debtor filed a "Specification of and Modification of Debtor's Chapter 13 Plan". The Bankruptcy Court then issued an order and notice to all creditors, attaching thereto a copy of the Specification and Modification.

This Specification and Modification provided the specifications not previously available.[14] The Debtor also modified her plan to expressly provide for 10.5% "discount" and lien retention by the Bank under the "cram down". This renders the Bank's argument in that regard moot.[15]

2. THE TRUSTEE DID NOT CHANGE THE DEBTOR'S PLAN IN THE CASE AT BAR

The Bank's argument here is that the Trustee cannot legally change a plan filed by a debtor. More particularly, the Bank contends that the Trustee changed the Debtor's 4-year plan to a 5-year plan.

The record on appeal prior to remand showed that the document labelled "CHAPTER 13 PLAN" and signed by the Debtor recites:

"this is a 4 5 year plan"

Next to these typed-in words are the initials "GH/DD".

---

12. Of course, this discretion may not be abused and must be exercised within the parameters of the Code.

13. This Bankruptcy Court also notes that "better" summaries are now being used in this Division.

14. With the time having run for filing claims and the value of the security having been determined, the Debtor was able to, and did, provide precision to her prior plan.

15. The Bank has demanded to receive this "discount" even though it had never rebated unearned interest. The Bank improperly had in-

cluded over $944.00 in unearned interest in the amount it claimed was due and payable as a pay off figure, despite the Code's requirement of the rebate being stated twice on the claim form. Slightly over $922.00 was required to be rebated under the Bank's motor vehicle contract and slightly over $22.00 was the required rebate under the Bank's small loan. After these rebates of unearned interest and the addition of the 10.5%, the amount to be paid to the Bank as an unsecured claim increases by a net $192.40 from what it would have received under its proof of claim.

The testimony of the Trustee and the Debtor's counsel upon remand establishes that the Trustee did not change or amend the plan to a 5-year plan. The Office of the Trustee had advised the Office of the Debtor's counsel that the plan could not be paid out in 4 years. But, the change was made by the Debtor through the office of her counsel. The change was made to correct an error.[16]

### 3. THE PLAN FOR 5 YEARS WAS PROPERLY CONFIRMED FOR CAUSE

The new Code provides that a Chapter 13 plan "may not provide for payments over a period that is longer than three years, unless the Court, *for cause* approves a longer period, but the Court may not approve a period that is longer than 5 years". 11 U.S.C. § 1322(c) (emphasis added).

The plan confirmed in the case at bar was for 5 years.

The Bank contends that the confirmation of the plan for a period over 3 years was error, arguing that *"no cause"* was ever shown nor did the Bankruptcy Judge make any inquiry in that regard.

■ The plan for 5 years was properly confirmed.[17]

■ The evidence establishes: the Debtor cannot pay off all secured claims plus administrative expenses in 3 years, let alone 100% of unsecured claims; and the Debtor, by use of her best efforts, can pay all administrative expenses and all secured and unsecured claims in a full 5 years—but not in less time.

Although Chapter 13 does not require full payment of all unsecured claims, this Bankruptcy Court certainly will not discourage a debtor from that undertaking.[18]

### 4. THE DEBTOR'S PLAN, AS SPECIFIED AND MODIFIED UPON REMAND, EXPRESSLY PROVIDES FOR LIEN RETENTION WITH "DISCOUNT" TO THE BANK

The new Code sets out three alternative requisites for confirming a plan as to secured creditors. The Debtor's plan shall be confirmed if, with respect to each allowed secured claim provided for by the plan:

ONE (A) the holder of such claim has accepted the plan;

or

TWO (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as to the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;

or

THREE (C) the debtor surrenders the property securing such claim to such holder;

11 U.S.C. § 1325(a)(5).

The first method is obtaining the secured claimant's acceptance of the plan. In the

---

**16.** The Debtor's Specification and Modification upon remand clearly provided for a 5-year plan.

**17.** The Bank filed an objection raising this issue but failed to prosecute it. Where no objection is filed or, as in the case at bar, an objection is filed but not prosecuted, the bankruptcy judge need not take evidence on the requisites for confirmation. See *In re Garcia*, 6 B.R. 35, 6 B.C.D. 1212 (Bkrtcy.D.Kansas 1980) (Pusateri, B.J.); *In re Ratmansky*, 7 B.R. 829, 6 B.C.D. 1362, 1364–1365 (Bkrtcy.E.D.Pa.1980) (Goldhaber, B.J.). In such instances the bankruptcy judge may base his decision to confirm on all matter in the file before him, including the debtor's schedules. *In re Ratmansky*, 7 B.R. 829, 6 B.C.D. 1362, 1365 (Bkrtcy.E.D.Pa.1980) (Goldhaber, B.J.).

**18.** Of course, if the undertaking appears unrealistic, such as not providing for necessaries, this Bankruptcy Court may not confirm the plan. One appropriate judicial response to such a plan, would be to deny confirmation subject to amendment of the plan to provide for a lesser percentage to unsecured creditors.

Ironically, if this Bankruptcy Court refused to confirm the plan beyond a 3-year period, the Debtor would have had to amend her plan in several respects. The Debtor would offer to pay unsecured claimants (including the Bank in its status as an unsecured creditor) virtually nothing. It is difficult to understand why the Bank seeks this result.

case at bar, 2 of the 4 secured claimants expressly accepted the Debtor's plan. A third secured claimant is deemed to have accepted the plan by failure to accept or reject. Bankruptcy Rule 13–202(a).

The only secured claimant which rejected the plan was, of course, the Bank.

The third alternative for confirming the plan as to secured claimants is for the Debtor to surrender the collateral to any rejecting secured claimant. The Debtor in the case at bar has never surrendered the automobile to the Bank.

Therefore, to confirm the Debtor's plan, the second alternative must be met. That alternative is commonly referred to as the "cram down". This provision allows the Debtor to "cram" the Debtor's plan down the throat of a rejecting secured creditor.

But Congress has seen to it that the rejecting secured creditor receives some benefits to ease its forced "swallowing" of the Debtor's plan. Those benefits are set out in Section 1325(a)(5) of the new Code, as follows:

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as to the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

11 U.S.C. § 1325(a)(5)(B); *In re McLeod*, 5 B.R. 520, 521, 2 C.B.C.2d 319, 320–321 (Bkrtcy.N.D.Ga.) (Robinson, B. J.).

The first benefit is that the debtor's plan provide that the rejecting secured creditor retain his lien. 11 U.S.C. § 1325(a)(5)(B)(i). The Debtor's initial plan in the case at bar did not specify that the Bank would retain its lien. As modified, however, the Debtor's plan expressly provides for lien retention.

The second benefit that the rejecting secured creditor must receive is the capitalized value of its security. 11 U.S.C. § 1325(a)(5)(B)(ii). That is, since the rejecting secured creditor is going to be receiving the present value of its security over a period of time, that creditor is entitled to receive a time value for the delay in the receipt of its money. *McLeod*, 5 B.R. at 521. In effect, the Bank must receive "interest" or "discount" on its payments. There is no requirement that this "interest" or "discount" be provided for in the Debtor's plan—but, the rejecting secured creditor must be paid it.

■ This additional "interest" or "discount" is not a part of the secured claim; it is unsecured. 5 *Collier* ¶ 1325.-01[2][E][2][b][ii][A][3][b][ii] at pp. 1325–26, 1325–27 (15th ed.).

■ The Bank will receive this "interest" or "discount" when the distribution to unsecureds is made. *McLeod, supra*. The Debtor's plan, as specified and modified upon remand, expressly provides for the payment of such "interest" or "discount".

5. NCNB MORTGAGE CORP. WAS PROPERLY TREATED AS A SECURED CREDITOR FOR PURPOSES OF ARREARAGES EVEN THOUGH THE PROOF OF CLAIM WAS FILED AFTER THE MEETING OF CREDITORS

The Debtor listed NCNB Mortgage Corp. as a secured creditor with a substantial arrearage. This creditor was sent an Order and Notice of the meeting of creditors with its summary of the Debtor's plan. Accompanying this Order and Notice was a proof of claim form.

The Debtor's meeting of creditors took place on February 12, 1981. The creditor, NCNB Mortgage, did not file its proof of claim until February 20, 1981.

The Trustee at the confirmation hearing on February 25, 1981, stated that in carrying out the Debtor's plan, NCNB Mortgage would be paid the arrearages as a secured claimant at the rate of $52.00 per month.

On appeal, the Bank contended that these payments to NCNB Mortgage as a secured claimant are improper and require the confirmation order to be vacated.

■ More specifically, the Bank argued that the *notice* must *state* that for a claim

to be allowed as secured the proof of claim must be filed before the conclusion of the meeting of creditors. For this proposition the Bank cites Bankruptcy Rule 13–204(a).

The Bank is incorrect. The third sentence of Bankruptcy Rule 13–204(a), indeed, does state what the Bank asserts. However, that sentence is inconsistent with the new Code and therefore no longer the law. (1979 Collier Pamphlet Edition Bankruptcy Rules at 765, 1978 Bankruptcy Code—Comment).

■ The Bank then contends that "Rule 13–302(e) prohibits the payment, as secured, of any claim not filed before the conclusion of the first meeting".

This is incorrect. The full language of Bankruptcy Rule 13–302(e)(1) is:

(e) Time for Filing:

(1) Secured Claims. A secured claim, whether or not listed in the Chapter XIII Statement, must be filed before the conclusion of the first meeting of creditors in the Chapter XIII case unless the court, on application before the expiration of that time and for cause shown, shall grant a reasonable, fixed extension of time. Any claim not properly filed by the creditor within such time shall not be treated as a secured claim for purposes of voting and distribution in the Chapter XIII case. *Notwithstanding the foregoing, the court may permit the later filing of a secured claim by the debtor, the trustee or a co-debtor.*

Bankruptcy Rule 13–302(e)(1) (emphasis added).

A full reading of this provision shows that the deadline for filing is for the benefit of the debtor, trustee and any co-debtor—not a secured claimant. For a creditor to be able to *vote* as a secured creditor, it must file before the conclusion of the meeting of creditors. The creditor, however, may receive *distributions* as a secured creditor where the proof of claim is filed late by the debtor, trustee or co-debtor.

19. The Bank's standing to raise this issue is questionable; the Bank is not a party for

In other words, when the debtor or the trustee want a claim to be treated as secured for purposes of distribution—even though a proof of claim has not been timely filed—that creditor can be treated as such. The debtor or the trustee merely files a proof of claim for that creditor.

To require a different result simply because the secured creditor actually filed the proof of claim rather than the debtor or the trustee would fly in the face of the policy of that Rule. In fact, in the case at bar, all the Debtor or Trustee would have to do now is to file a proof of claim to fit literally within the Rule.[19]

In any event, the Debtor's Specifications and Modifications upon remand provided for distributions to NCNB Mortgage as a secured claim, or alternatively, as a separate class of unsecured claim, to be paid in the same manner as though it were allowed as secured. More particularly, the text of the specifications and modifications provides:

Additionally, the debtor expressly consents to requests that the proof of claim filed by NCNB Mortgage Corporation be allowed as a secured claim only for the purpose of distribution and only to the extent of the $598.32 arrearage on said obligation (which is secured only by real estate) as of the date of the entry of the order for relief. Bankruptcy Rule 13–302(e). If this claim of arrearage is not allowed as secured (as consented to and requested above), it shall be classified as a separate class of unsecured claim and shall be paid in the same manner as though it were allowed as secured. See 11 U.S.C. § 1322(b)(3)(4). [Footnote superscript 2].

The footnote to this paragraph of text states:

This classification of an unsecured claim to be paid with secured claims is expressly provided for in the Code and is related to the policies of Chapter 13 and does not unfairly discriminate against other unse-

whose benefit this provision exists.

cured claimants in that the preservation of the family home is essential to carrying out the debtor's proposed plan.

The express consent and request to have the NCNB Mortgage arrearage paid as a secured claim brings that claim within even the most literal reading of Bankruptcy Rule 13–302(e).

The alternative provided is to exercise an option under the § 1322(b) of the new Code and have the claim paid as though it were secured. The footnote quoted above is a proper statement of the standard for classification of claims under a Chapter 13. *In re Ragsdale*, 80–01537A (N.D.Ga.1980) (Drake, B. J.). Furthermore, it is a proper application of the standard.[20]

 The Bank also contends that § 1322(b) "is unconstitutional and is in violation of the Due Process and Equal Protection provisions of the United States Constitution". Objection to Debtor's Plan as Modified.

This constitutional attack is so vague and nonspecific as to render it meaningless. To the extent that the Bank may be arguing that the application of § 1322(b) unconstitutionally impairs its property interests, the Bank is incorrect. The security interest held by the Bank remains intact. What has been impaired is the Bank's ability to enforce its contractual rights against the Debtor at this time. However, this impairment of a contractual obligation is not unconstitutional. *Kuehner v. Irving Trust Company*, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1936).

**6. THE BANK'S OBJECTION TO CONFIRMATION WAS PROPERLY DISMISSED FOR WANT OF PROSECUTION**

 The Bank argues that this Bankruptcy Judge had a duty to consider and rule on its objections even though the Bank did not bother to send a representative to the hearing.[21]

The Bank is incorrect. An objection to confirmation gives rise to a "contested matter". (Bankruptcy Rule 914). Although not as formal as an adversary proceeding, such a contested matter clearly requires prosecution.[22]

Court's may extend judicial patience to matters prosecuted pro se by an indigent or a party suffering from disability. But it would seem highly irregular for a bankruptcy judge to start prosecuting the objections of a major financial institution against a hard-pressed debtor.

The Bankruptcy Judge has no obligation to prosecute the Bank's objection.[23]

**7. THE CONFIRMATION ORDER IS LEGALLY SUFFICIENT**

The Bank attacks the confirmation order filed in the case at bar on February 25, 1981 as being legally insufficient.

That confirmation order is virtually verbatim the form for such confirmation orders set forth in *Collier* 15th Edition. 6 *Collier* Form 13–301. The form in *Collier* is the form promulgated and published pursuant to Bankruptcy Rule 909, by the Director of the Administrative Office of the United

---

**20.** The evidence establishes that the preservation of the family home is essential to carrying out the Debtor's proposed plan. This residence has been the Debtor's home for the last four years. The Debtor has no alternative housing available. The loss of housing and ensuing severe disruptions would result in loss of the Debtor's job. With the loss of income, the Debtor's plan would fail.

**21.** A logical inference a judge normally would give to the failure of a major financial institution to appear at a hearing on its objections is that the objector has reconsidered its objections and concluded they were not worthy of pursuit.

**22.** The Bank's objection was not supported with a brief.

**23.** The Bankruptcy Judge, of course, does have an independent duty to make his confirmation decision in accordance with law when he has before him a proposed plan to be confirmed. The standards, however, by which a bankruptcy judge will evaluate a proposed plan when an objection is prosecuted are legally different from those when no objection is prosecuted. See, e. g., *In re Ratmansky*, 7 B.R. 829, 6 B.C.D. 1362, 1364–1365 (Bkrtcy.E.D.Pa.1980) (Goldhaber, B. J.).

States Courts as an illustrative form for use by all United States Bankruptcy Courts.

To the extent that the record on appeal was not sufficiently clear to the District Court on the length of the confirmed plan, there can be no doubt at this time that the plan confirmed was a 5-year plan.[24]

## 8. THE PROOFS OF CLAIMS OF NCNB MORTGAGE CORPORATION, KEN STANTON MUSIC, OTASCO AND NATIONAL CITY BANK OF ROME WERE PROPERLY "DOCUMENTED" AT THE TIME SUBMITTED

The Bank contends that the record does not show that the proofs of claim filed by various other creditors had the requisite attachments to establish their secured status. The claims challenged were those filed by NCNB Mortgage Corporation, Ken Stanton Music, and Otasco.

The Bank is correct to the extent that for a claim to be treated as a secured claim for purposes of distribution, the proof of claim generally must not only be filed by the conclusion of the 341 meeting, it must also have the requisite attachments. *In re Louie, NAACP Credit Union v. Louie*, 10 B.R. 928, 7 B.C.D. (Bkrtcy.E.D.Mich.1981) (Bobier, B. J.).

The three proofs of claim challenged had no such attachments in the rec-

ord on appeal. Yet, the transcript of the confirmation hearing shows that the Trustee and the Bankruptcy Judge were making references to the precise security of these claims and whether they were purchase money or non-purchase money. This additional documentation was before the Bankruptcy Court at the confirmation hearing.

At the hearing on remand, these proofs of claim with the requisite attachments were entered into evidence by the Trustee. The evidence established that these proofs of claim had been submitted in duplicate, with only one of the two proofs of claim having attachments. The proof of claim without attachments had been filed with the Clerk's Office and the proof of claim with attachments had been placed in the Trustee's file.[25]

As a result, the record on appeal only contained these proofs of claim without attachments.[26]

The Bank's objection to the secured status of these claims for lack of attachments is denied.[27]

## 9. THE DEBTOR'S PLAN TREATS THE SECURED CLAIMS PROPERLY

The Bank contends that the Debtor's plan, as modified, fails to provide equal treatment for secured claims. The Bank also complains that the amounts proposed

---

**24.** The evidence establishes that the Debtor's plan was a 5-year plan. Furthermore, this Bankruptcy Court has allowed the Debtor's Specifications and Modifications and the confirmed plan also is therefore specified and modified, including the specification of the 5-year term of the Debtor's plan.

The modified plan also meets each of the confirmation criterion set out in that confirmation order. For example, it complies with the provisions of Chapter 13 and the other applicable provisions of the Code; all pre-confirmation fees have been paid; the plan has been proposed in good faith and not by any means forbidden by law; and, the Debtor will be able to make all payments under the plan and to comply with the plan.

**25.** The original proof of claim with whatever attachments, if any, must be filed with the Clerk's Office or transmitted to same forthwith upon receipt by the Trustee, and retained in the permanent file of that bankruptcy case. What-

ever copies of these filings the Trustee's Office needs for efficient and effective operation is an administrative matter to be worked out between the Clerk's Office and the Trustee's Office.

**26.** The evidence further establishes that the Ken Stanton Music, Otasco and National City Bank of Rome proofs of claim with attachments had been filed before the conclusion of the 341 meeting.

The NCNB Mortgage Corporation claim, of course, was not filed until after the conclusion of the 341 meeting.

**27.** Were the Bankruptcy Court to disallow the secured status of these claims due to the lack of the attachments being previously in the record, the Bank's claim would be susceptible to the same challenge by the Debtor or other creditors, since the attachments to its proof of claim were not previously in the record.

to be paid per month on the secured claims are arbitrary and discriminatory to the Bank.

The Bankruptcy Court disagrees.

■ The Code does not require that all secured claims receive equal treatment.[28] Where each such claim is secured by different collateral or has a different priority in the same collateral it can be treated differently and separately. *In re Wittenmeier*, 4 B.R. 86, 87 (Bkrtcy.M.D.Tenn.1980) (Jennings, B. J.).

■ In the case at bar, each secured claim is either secured by different collateral or has a different priority in the same collateral. Furthermore, all of the secured claimants except the Bank accepted the initial plan as well as the plan as modified. Therefore, as to those secured claimants, they have accepted their treatment. The Bank is the only secured claimant which rejected its proposed treatment. But the Debtor in turn imposed a "treatment" on the Bank by meeting the requirements of the "cram down". The Bank is receiving 100% of the value of its security plus a "discount" for the delay in payment. Moreover, since the Bank is receiving its distributions either concurrently with, or ahead of, other secured claimants it is not in a position to complain of the hierarchy classification for distribution among secured claimants.[29]

The $100.00 per month payment to the Bank is rational. It allows for the payment of the $4,865.00 secured portion of the Bank's claim well within the 5-year duration of the plan while allowing the arrearage on the residence to be paid off in something over one year.[30]

10. ALL INDEBTEDNESS WITH MATURITY DATES WHICH EXTEND PAYMENTS BEYOND THE STATED TERM OF THE PROPOSED PLAN PROPERLY MAY BE PAID OUTSIDE OF THE PLAN

The Debtor provided, at paragraph "D" of its Specification and Modification, the following:

Unless specified otherwise above, all indebtedness with maturity dates which extend payments beyond the stated term of the proposed plan are to be paid outside of the plan; provided, in any event, the following shall be paid outside of the plan: _____.

The Bank objects to any payment being made outside of the plan on the ground that the creditors have not been furnished the full particulars thereof.

■ There is no requirement that the creditors be "furnished the full particulars thereof" by notice. Those "particulars" can be provided upon request, at the hearing scheduled for those purposes.[31]

The record shows that the only claim filed with a maturity date beyond the 5-year term of the Debtor's plan is that of the first mortgage holder, NCNB Mortgage Corporation.

11. THE DEBTOR'S CLASSIFICATION OF UNSECURED CLAIMS AS "PRIORITY" AND "NON–PRIORITY" IS NOT A DEFECT

■ The Bank objects to the classification of unsecured claims as "priority" and

---

**28.** Each secured claimant, of course, is to receive 100% of the value of its security.

The amount stated on each proof of claim is prima facie evidence of the amount of that claim. Bankruptcy Rule 13–301(b). These proofs of claim stated a value for the security.

**29.** The Debtor's modification expressly provides for a hierarchy of payments to secured claimants. Where there is no express hierarchy of payments in a debtor's plan before the Bankruptcy Court, the secured creditors should be paid pro-rata.

**30.** The Code provides for arrearages to be paid off within a reasonable time. 11 U.S.C. § 1322(b)(5).

**31.** There is no requirement that the current payments on a first mortgage be paid by the Trustee under the plan as opposed to being paid by the debtor outside the plan. Subsection "(b)(5)" of § 1322 merely *permits* such current payments to be made by the Trustee under the plan; it does not require them. *In re Wittenmeier, supra.*

"non-priority". The grounds are that such a classification is arbitrary and discriminatory and that the creditors are not designated by name, amount and classification.

This objection is overruled.

"Priority" claims are those set out in §§ 507 and 1326. Except for certain "priority" amounts which must be paid at or before distributions to creditors, "priority" claims may be paid in deferred payments. Under Chapter 13, unsecured "priority" claims differ from the general unsecured claims in that such priority claims must be paid in full, whereas general unsecured claims can be paid a percentage. 11 U.S.C. § 1322(a)(2).

Thus, sub-classifying unsecured claims into "priority" and "non-priority" claims is a distinction related to the policies of Chapter 13 and does not unfairly discriminate against non-priority unsecured claims. It is a proper form of classification.[32]

Moreover, this sub-classification is of no consequence in the case at bar. As of the date of the hearing on the Specification and Modification, the 6-month period for filing had run with no "priority" claims being filed.

## 12. THE DEBTOR'S MODIFIED PLAN MEETS THE "BEST INTEREST OF CREDITORS" TEST

 The Bank claims that the Debtor's modified plan does not meet § 1325(a)(4) of the Code, which requires:

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

11 U.S.C. § 1325(a)(4).

This confirmation criterion is commonly referred to as the "best interest of creditors" test. Simply put, if an unsecured creditor would receive more in a Chapter 7 liquidation than under the proposed Chapter 13 plan, the plan cannot be confirmed.

In the case at bar, the Debtor's modified plan proposes to pay unsecured creditors 100% over the term of the plan. These unsecured claims are to be paid out of future wages. 11 U.S.C. § 1306(a)(2).

In a Chapter 7 liquidation, future wages would not be included as property of the estate. 11 U.S.C. § 541. Those wages would not be available for unsecured creditors. After exemptions, there would be very little, if anything, to pay to unsecured creditors. Accordingly, the percentage that would be distributed to unsecured claimants in a Chapter 7 would be much closer to 0% than to the proposed 100% in this Chapter 13.

This modified plan meets the "best interests of creditors" test.

## 13. DEBTOR'S ATTORNEY'S FEES

 The Bank objects to any award of attorney's fees that is not made in compliance with § 330(a)(1) of the Code and Rule 219 of the Bankruptcy Rules.

The only award of attorneys fees has been the $350.00 award to the Debtor's counsel. That award is reaffirmed. It is in compliance with Code and the Rules. 11 U.S.C. §§ 329, 1326(a), 507(a)(1), 330(a) and 102(1); Bankruptcy Rules 13–203(a), (b), 203(a), (b), 13–207, 219, 13–210.

The Debtor's Specification and Modification is ALLOWED and the Bank's objections are DENIED, and a separate order pursuant to Bankruptcy Rule 921(a) will be entered pursuant hereto.

---

**32.** It is a proper classification. *In re Ragsdale*, 80–1537A (N.D.Ga.1980) (Drake, B. J.).