**In re John Duane PRATT, Quoteal Barnes Pratt, Debtors.**

**Bankruptcy No. 87–20198.**

United States Bankruptcy Court, D. Montana.

June 24, 1987.

McKinley Anderson, Bozeman, Mont., for debtors.

Kenneth R. Neill, Great Falls, Mont., for creditor.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

The creditor Nollmeyer Farms, Inc. has contested the eligibility of the Debtors as family farmers under 11 U.S.C. § 101(17). The issue involves the application of the gross income test, which requires that an individual family farmer and his spouse receive more that 50% of their gross income from farming operations.

The facts are undisputed. The Debtors filed this Chapter 12 case on April 6, 1987. Under § 101(17) of the 1986 Family Farmer Bankruptcy Act of 1986, P.L. 99–554, 11 U.S.C. § 1201 et seq., the income test for eligibility requires the Debtors to show gross income for the taxable year 1986 in excess of 50% from their family farm operation.[1] In 1986, the Debtors received in-

---

1. (17) "family farmer" means— .(A) individual or individual and spouse engaged in a farming operation whose aggregate

come from the following sources according to Debtors' Schedules and testimony, to-wit:

Farm Income:

| | | |
|---|---|---|
| Cattle sales—$59,832.00 less cost of cattle $39,803.00—net | $20,029.00 | |
| Farm labor | 1,500.00 | |
| Total | $21,529.00 | |

Non-Farm Income:

| | |
|---|---|
| Quoteal Pratt salary | 14,052.69 |
| Rental Income | 6,000.00 |
| Contracting Income from dwelling unit—$76,335.69 less expenses $69,335.69—net | 7,000.00 |
| Total Non-Farm Income | $27,052.69 |
| Total Gross Income | $48,581.00 |

According to the legislative history of P.L. 99–554 (H.R. 5316), the income limitations were added to the legislation to prevent high income, low non-farm debt tax shelter investors from qualifying for relief under Chapter 12. The statement in the Senate from Senator McConnell was as follows:

"The language that I propose to add to Senator Grassley's bill would establish more reasonable guidelines to insure that the use of chapter 12 bankruptcy is restricted for family farms and corporations, not for corporations involved in farming just for the tax shelter that farming has provided in the past. There would be a requirement added to the definition of 'family farmer' that requires that, for the purposes of this definition, that a farmer must receive at least 50% of his gross income from farming. In addition, a corporation who seeks to file under chapter 12 must have 50 percent of its stock or equity owned by a person who is actually farming." 132 Cong.Rec. S. 5614 (daily ed. May 8, 1986).

debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by

Determining eligibility under the gross income test requires a careful review of the Debtors' tax and financial records for the prior tax year. However, the term gross income is not defined in the Code. There is, nevertheless, case authority which interprets the term gross income as it is used in § 101(19) in defining farmers. § 101(19) also uses the term gross income, and relates the test to the preceding tax year from the date the case was commenced. The case of *Matter of Wagner*, 808 F.2d 542 (7th Cir.1986), holds the term gross income in the definition of farmer under § 101(19) [formerly § 101(17) ] is intended to refer to gross income as defined in Section 61 of the Internal Revenue Code of 1954, as amended. *Wagner* states:

"Prior to the 1978 overhaul of the bankruptcy law the definition of 'farmer' had undergone a painful statutory evolution each stage of which had generated considerable litigation. See Oler, *The Farmer and the Bankruptcy Laws*, 40 Dickinson L.Rev. 122 (1936). In the last stage, the statute, still worded unclearly, had been interpreted to mean 'an individual personally engaged in farming,' provided that 'the principal part of his income' was derived from farming. See 11 U.S.C. § 1(17) (1976 ed.); *In re Beery*, 680 F.2d 705, 713 (10th Cir.1982). The substitution of an income test for the earlier tests of whether the individual was 'chiefly' or 'primarily' engaged in farming—tests hopelessly vague in practice, as shown by such cases as *Powers v. Silberman*, 3 F.2d 802 (3d Cir.1925), and *In re Macklem*, 22 F.2d 426 (D.Md.1927) —was a step toward greater precision; but the statute defined neither 'principal part' nor 'income,' and in particular it failed to indicate whether gross or net income was intended. See *In re Beery*, supra, 680 F.2d at 713–17. Against this

such individual or such individual and spouse, and such individual or such individual and spouse received from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed.

background Congress in the 1978 Code made a fresh start by defining 'farmer' as one who 'received more than 80 percent of [his] gross income during' his immediately preceding 'taxable year ... from a farming operation owned or operated' by him. 11 U.S.C. § 101(17). (Section 101(18) defines 'farming operation' to include 'farming, tillage of the soil, dairy farming,' etc.) No legislative history bears on the question whether 'gross income' in the new statute should be given the same meaning that it has in federal income tax law.

\* \* \* \* \* \*

From the statutory references to 'taxable year' and 'gross income,' both themselves technical terms, though of tax law rather than bankruptcy law, it is possible to infer that Congress intended to use these terms in section 101(17) in their tax sense. Certainly 'taxable year' is so used; Wagner does not dispute that. Whether 'gross income' was intended to be used in its tax sense is less certain. Maybe, as Wagner argues, Congress used 'taxable year' merely to spare the farmer the bother of having to keep an additional set of books in order to be sure not to lose his bankruptcy exemption.

\* \* \* \* \* \*

█ Yet, on balance, the interpretation that will best carry out Congress's purposes in the Bankruptcy Code is that gross income for purposes of the farmer's exemption has the same meaning as in the Internal Revenue Code. The language and background of section 101(17) show that Congress wanted a mechanical, which is to say an easily applicable, test for 'farmer' rather than a test that would reflect the economic realities of agriculture.

\* \* \* \* \* \*

But for either creditor or debtor to decide what the debtor's gross income is in some sense of 'gross income' that is significant for the policy of the bankruptcy law would be an altogether more uncertain undertaking, at least until the courts had evolved a jurisprudence of gross income for this purpose. The threshold determination of eligibility for the exemption should not be subject to such uncertainty. Debtors and creditors ought to be able to know from the start whether the debtor is exempt from bankruptcy; they would not know till much later if we embarked on the protracted undertaking of constructing, in common law manner, case by case, a new jurisprudence of gross income. All this assumes moreover that 'income' itself is a straightforward concept; it is no more straightforward than 'gross' income is. Compare *Howell v. United States*, 775 F.2d 887 (7th Cir.1985).

\* \* \* \* \* \*

Moreover, no matter how brilliantly the courts aligned the concept of gross income in the Bankruptcy Code, with the best thinking of economists and accountants on the difference between income and capital, the statutory definition of farmer would still be arbitrary. The brilliance would be wasted, but bankruptcy litigation would be formented, and both debtors and creditors would be made worse off, since creditors when extending credit to a farmer wouldn't know what their remedies were in the event of default and farmers wouldn't know whether they were exempt from bankruptcy. The way to make section 101(17) work best is to make it work simply. That is most easily done by deeming the statute to incorporate the definition of gross income in federal income tax law. Then everyone will know where he stands. Given the arbitrary nature of the statutory definition of farmer, no higher value than certainty can be served by the interpretation of the words gross income; and the interpretation that best serves that value is the one that equates gross income in the Bankruptcy Code to gross income in the tax code. Needless to say, we express no view on whether the same equation should be made in interpreting other statutes that use the words 'gross income' without express reference to the Internal Revenue Code. See 2 U.S.C. Sec. 707(1); 5 U.S.C.App.

Sec. 209(1); 42 U.S.C. Sec. 300n(3)(c)." *Id.* 544–549.

■ The rationale of the *Wagner* case is likewise applicable to Section 101(17) of the 1986 Act, and thus requires an application of the IRS Code definition of gross income as an eligibility test for a family farmer.

■ *U.S. Master Tax Guide*, CCH 1986, references the appropriate tax standards on gross income:

"701. Gross Income Defined. For Federal income tax purposes, 'gross income' means all income from whatever source, except for those items specifically excluded by the Code (Code Sec. 61).

Fifteen of the more common types of 'gross income' are enumerated by Code Sec. 61. They are: (1) Compensation for services, including fees, commissions, fringe benefits, and similar items; (2) Gross income from business; (3) Gain from dealings in property; (4) Interest; (5) Rents; (6) Royalties; (7) Dividends; (8) Alimony and separate maintenance payments; (9) Annuities; (10) Income from life insurance and endowment contracts; (11) Pensions; (12) Income from discharge of debt; (13) Partner's share of partnership income; (14) Income 'in respect of a decedent'; and (15) Income from an interest in an estate or trust.

\* \* \* \* \* \*

766. Business Profit. The definition of gross income in Code Sec. 61 includes 'gross income derived from business.' As to a business, however, gross income is usually the same as gross *profit,* not gross *receipts.* Gross profit is the total receipts from sales minus the cost of the goods sold.

\* \* \* \* \* \*

771. Farming Is A Business. Essentially, income from farming is treated in the same way as income from any other business. Every individual, partnership or corporation which cultivates, operates, or manages a farm for gain or profit, either as owner or tenant, is designated as a farmer. A person who cultivates or operates a farm for recreation or pleasure, the result of which is a continual loss from year to year, is not regarded as a farmer. See ¶ 1059.

Cash Basis. A farmer on the cash basis does not use inventories. In addition to filing Form 1040, he must file a Schedule F (Form 1040), 'Farm Income and Expenses.' The general rules for all cash-basis taxpayers also apply to a farmer on the cash basis. See ¶ 611. A farmer must also file Schedule SE (Form 1040) for computing earnings from self-employment. See ¶ 190.

A farmer on the cash basis must include in gross income all cash, or the value of merchandise or other property *received* from the sale of livestock and produce which he has raised, profits from the sale of livestock or other items which have been bought by him, and gross income received from all other sources. A cash-basis farmer may defer recognition of gain from the sale of a crop delivered in one year until the following year if he enters into a valid contract with the purchaser or the purchaser's agent that prohibits payment until the following year, but not if the payment is deferred merely at the seller's request.

Profit from the sale of livestock or other items bought by a farmer is computed by deducting the cost from the sales price. In case animals are sold which originally were bought as draft or work animals, or for breeding or dairy purposes and not for resale, the profit is the difference between the sale price and the depreciated basis of the animal sold.

A cash-basis farmer who receives insurance proceeds as a result of destruction or damage to crops may elect to include the proceeds in income in the year after the year of damage or destruction if he can show that the income from the crops would normally have been reported in such following year. This includes payments received under the Agricultural Act of 1949 as a result of the destruction of or damage to crops caused by drought, flood, or other natural disaster, or the inability to plant crops because of such a natural disaster. (Code Sec. 451(d)).

A cash-basis farmer who is forced to sell live-stock (other than foundation herd livestock), due to drought conditions in an area designated as eligible for assistance by the Federal Government may elect to be taxed on the forced sale income (gain that normally would not have been realized in the year of the forced sale) in the following year if he can show that the income from the sale of livestock would normally have been reported in such following year (Code Sec. 451(e)).

Accrual Basis. A farmer on the accrual basis must use inventories taken at the start and the end of his taxable year. Such a farmer must also use Schedule F (Form 1040) and Schedule SE (Form 1040) for the special self-employment tax computations for farmers.

Gross profit of a farmer on the accrual basis is found by adding to the inventory value of livestock and products at the end of the year the amount received from the sale of livestock and products (and any other receipts such as for the hire of machinery) and subtracting from this total the sum of the inventory value of livestock and products at the beginning of the year and the cost of such items bought during the year.

Livestock raised or bought for sale must be inventoried. See ¶ 654. Livestock bought for draft, breeding or dairy purposes and not for sale may be inventoried or, instead, be treated as capital assets subject to depreciation, if the method used is consistently followed from year to year. If inventoried livestock is sold, its cost must not be taken as an additional deduction in the return of income, since the inventory will reflect such cost.

Aside from ordinary methods, two other inventory methods are available to the farmer. He may use either the 'farm-price' method, or the 'unit-livestock-price' method; as to which see ¶ 654.

For income from the sale of farm property other than inventory, see Chapter IX. As to 'tax shelter' farming operations, see ¶ 365–367.

A farmer is subject to the same rules as any other individual regarding the use of Form 1040 (¶ 118), exemptions (¶ 151), and the zero bracket amount (¶ 126). For expenses of a farmer, see ¶ 1059.

\* \* \* \* \* \*

**773. Commodity Credit Corporation Loan.** Amounts received as loans from the Commodity Credit Corporation may, at the election of the taxpayer, be considered as income and included in gross income for the taxable year in which received. (Reg. § 1.77–2)."

Applying the above tax tests to the facts of this case brings the Court to the conclusion that Pratts do not qualify under the 50% income test rule. Pratt's sale of cattle in 1986 brought gross income of $20,029.00, the difference between the sales price and the cost of goods sold. The contracting income is treated in the same manner. Since the total gross income from farming operations was 44% of Debtors total gross income ($21,529 ÷ $48,581), the Debtors do not qualify as family farmers under Chapter 12 of the Code.

IT IS ORDERED the motion of Nollmeyer Farms, Inc. to dismiss this case is granted.