In re Charles L. GOSSETT and Linda P. Gossett, Debtors.

Bankruptcy No. 1–87–04326.

United States Bankruptcy Court, S.D. Ohio, W.D.

June 30, 1988.

Richard L. Goettke, Blanchester, Ohio, for debtors.

J. Michael Debbeler, Cincinnati, Ohio, for Liberty Savings Bank, F.S.B.

Asst. U.S. Trustee, Cincinnati, Ohio.

## ORDER

BURTON PERLMAN, Chief Judge.

This Chapter 12 case has proceeded to the point of the filing of a plan which was set for hearing on confirmation. A creditor, Liberty Savings Bank, F.S.B. ("LSB"), filed objections to the plan at the confirmation hearing. While in its initial filing LSB set out a number of grounds for objection, only two remained at the time of the hearing. These were (1) the issue of eligibility for Chapter 12 given the debtors' level of non-farm income and (2) whether a creditor could require the debtors to extend their plan to five years.

From the schedules and the submissions of counsel, we find the following facts. The debtors, Charles and Linda Gossett, own approximately 140 acres and lease an additional 430 acres of farmland near Lynchburg, Ohio. They raise hogs and grow corn and soybeans on this land. They have engaged in farming since 1971. Debtors also own and operate Gossett's Farm Supply, a grocery and feed store in Hillsboro, Ohio. This business was begun in 1982.

The debtors' 1986 income tax return, Schedule F (Farm Income and Expenses) shows gross farm income of $71,621.00, with a net profit of $10,172.00.

In addition to their farm income, in 1986 debtors had income of $3,800.00 in wages, salaries and tips. (Mr. Gossett began working part-time at Airborne Express five months prior to the bankruptcy filing and he also works part-time at the Gossett Farm Supply store; Mrs. Gossett is a full-time employee at the store.) They also listed $652.00 in interest income, $1,569.00 in business income from their farm supply store, $9,192.00 from pensions, and $1,753.00 from a loss carry-forward.

1. Eligibility for Chapter 12.

According to 11 U.S.C. § 109(f), "[o]nly a family farmer with regular income may be a debtor under Chapter 12 of this title." Section 101(17)(A) defines family farmer in relevant part as an individual or individual and spouse engaged in a farming operation who "receive from such farming operation more than 50% of [their] gross income for the taxable year preceding" the year they file their bankruptcy petition.

"Gross income" is not defined in the Bankruptcy Code, and the determination of farm versus non-farm income is not as clear-cut as one might hope. The Seventh Circuit Court of Appeals, believing Congress intended a mechanical, easily applicable test for determining who is a farmer, has stated:

The way to make Section 101(17) work best is to make it work simply. That is most easily done by deeming the statute to incorporate the definition of gross income in federal income tax law. Then everyone will know where he stands. Given the arbitrary nature of the statutory definition of farmer, no higher value than certainty can be served by the interpretation of the words gross income; and the interpretation that best serves that value is the one that equates gross income in the Bankruptcy Code to gross income in the tax code.

In re Wagner, 808 F.2d 542, 549 (7th Cir. 1986).

Some courts have followed Wagner in rejecting the "mud on the boots" approach to determining who is a farmer under the Bankruptcy Code. See, In re Bergmann, 78 B.R. 911 (Bankr.S.D.Ill.1987) (court does not have power to look beyond face of debtors' income tax return); In re Nelson, 73 B.R. 363 (Bankr.D.Kan.1987) (court must follow rule of technical adherence to definition sections of the Code; court has neither power nor inclination to delve beyond face of debtors' tax returns.)

Other courts have adopted a less rigid posture. "[A] strict tax code approach should be modified or abandoned in those cases in which a tax code solution would be absurdly irreconcilable with the Chapter 12 statutory provisions and legislative history." In re Faber, 78 B.R. 934, 935 (Bankr.S.D.Iowa 1987). See also, In re Welch, 74 B.R. 401 (Bankr.S.D.Ohio 1987).

In the case before us, LSB argues that for purpose of determining debtors' Chapter 12 eligibility, the gross sales from their farm supply store, with no deduction taken for cost of goods sold, should be used in figuring their non-farming gross income from this source. But, says LSB, if cost of goods is to be deducted from the total sales to arrive at a "gross income" figure for the farm supply store, then the same approach should be followed for calculating farm income, i.e., the costs of operation should be deducted. By following the same method for calculating both farm and non-farm gross income, LSB argues, the non-farm income would clearly represent more than 50% of debtors' 1986 income and they would thus be ineligible for Chapter 12 relief.

Debtors, to the contrary, argue that "gross income" from the farm supply store is gross sales minus cost of sales, or $14,977.00. When added to the pension, interest and non-farm wages listed on the return, total non-farm income then is $28,621.00. They then argue that gross farm income listed as $71,621.00 should not be reduced by expenses. When that position is taken, debtors' farm income clearly exceeds 50% of their total income.

■ We accept the debtors' position on the issue of eligibility. We are justified in doing so under either the Wagner or Faber approach.

Gross income, according to § 61 of the Internal Revenue Code, is "all income from whatever source, except for those items specifically excluded by the Code." 26 U.S.C. § 61. Listed within this definition are 15 types of income. One so listed is "gross income from business". This phrase is not further defined, but at least two recent bankruptcy cases have found "gross income from business" to mean gross *profits* and not gross receipts. Gross profits are the total receipts minus the cost of goods sold. In re Pratt, 78 B.R. 277, 280 (Bankr.D.Mont.1987). Citing Treasury Regulation § 1.6–3(a), the court in Faber, supra, held that gross income for businesses engaged in manufacturing, merchandising or mining is determined by deducting the cost of goods sold from the total sales. Under this definition, the debtors' "gross income" from the farm supply store, which is a merchandising business, would be $14,977.00 ($63,500.00 gross sales, minus $48,523.00 for cost of goods sold).

Adding this figure to the other non-farm sources of income, we find the debtors' total non-farm gross income for 1986 was as follows:

| | |
|---|---|
| Wages, salaries, etc. | $ 3,800.00 |
| Interest | 652.00 |
| Business income from farm supply | 14,977.00 |
| Pensions | 9,192.00 |
| | $28,621.00 |

To determine gross farm income, we look again to the case of *Faber, supra.* Citing the tax standards for "gross income" set forth in the U.S. Master Tax Guide, CCH 1986, the court in *Pratt* at p. 280 found that:

A farmer on the cash basis must include in gross income all cash, or the value of merchandise or other property *received* from the sale of livestock and produce which he has raised, profits from the sale of livestock or other items which have been bought by him, and gross income received from all other sources.

Profit from the sale of livestock or other items bought by a farmer is computed by deducting the cost from the sales price.

This definition does not contemplate a reduction of gross receipts from farming by all farm expenses shown on debtors' tax return as urged by LSB. It would only be proper to deduct the cost of resold livestock, a fact pattern which does not apply here. Using the *Faber* guideline then, as taken from their 1986 Schedule F (Farm Income and Expenses), debtors' farm income would be $71,621.00. (Sale of livestock, produce, grains, etc., $60,162.00; profit from livestock bought for resale, $1,783.00; cash, $8,625.00; machine work, $840.00; other income, $211.00.)

Thus, by looking no further than the income tax returns of the debtors, we find a total farm gross income of $71,621.00, compared to non-farm income of $28,621.00. If it were necessary to look beyond the returns, the record as presented shows a family whose main endeavor for the past 17 years has been farming. The debtors are neither farming as a large corporate operation, nor as a tax shelter, two situations that Congress specifically did not want to protect when it enacted the Chapter 12 provisions. *See*, 132 Cong.Rec. 515076 (Daily Ed. Oct. 3, 1986). It is clear that for purposes of 11 U.S.C. §§ 101(17)(A) and 109(f), the debtors are family farmers and may be debtors under Chapter 12.

2. Compel Extension Beyond Three Years.

The second issue presented is whether LSB can compel the debtors to extend their plan beyond three years in order to increase the dividend paid to unsecured creditors. The bank's argument is essentially one of equity. It argues that the proposed payment of only 8.7% to unsecured creditors is unfair in light of the debtors' potential ability to discharge a significant portion of their debt.

LSB cites no case authority for its position and we have found none. The statute in question, 11 U.S.C. § 1222(c), provides that:

...the plan may not provide for payments over a period that is longer than three years unless the court *for cause* approves a longer period, but the court may not approve a period that is longer than five years. (Emphasis supplied.)

"Cause" under § 1222(c) is not defined by the Code. The language of § 1222(c) is, however, identical to that of § 1322(c), and there is abundant, though not unanimous, case law interpreting "cause" in a Chapter 13 context. *See, e.g., In re Festa*, 65 B.R. 85 (Bankr.S.D.Ohio 1986); *In re Fries*, 68 B.R. 676 (Bankr.E.D.Pa.1986); *In re Greer*, 60 B.R. 547 (Bankr.C.D.Cal.1986); *In re Powell*, 15 B.R. 465 (Bankr.N.D.Ga.1981); *In re Stein*, 18 B.R. 768 (Bankr.S.D.Ohio 1982).

In the recent, jointly-decided cases of *In re Pierce*, No. 2–87–03253, *In re Owens*, No. 2–87–03330, and *In re Mahr*, No. 2–87–03415 82 B.R. 874 (Bankr.S.D.Ohio 1987) (Cole, J.), collectively *"Pierce"*, all three debtors voluntarily proposed Chapter 13 plans in excess of 36 months in order to

pay higher dividends to unsecured creditors. The debtors apparently felt personal obligations to make higher percentage payments than those possible under three-year plans, and were also concerned that lower percentage plans might violate the good-faith requirement of § 1325(a)(3).

The court found that the definition of cause was left by Congress "to judicial discretion, to be decided on a case by case basis", citing *In re Poff*, 7 B.R. 15, 17 (Bankr.S.D.Ohio). Such cause could be the curing of a default, the payment of priority or allowed secured claims, the preservation of a subsequent discharge under § 727(a)(9) by payment of a 100% dividend, or a sincere and honest effort to repay all creditors.

The court thus determined that nothing in the Code prohibits a debtor from *voluntarily* extending a plan beyond three years, and a desire by the debtor to pay a higher dividend to creditors may be justifiable cause for extension. It specifically held, however, that:

> ...if the debtor could be required by the trustee, a creditor, or other party-in-interest, to extend his or her plan beyond three years, such a requirement would be a form of involuntary servitude in the eyes of this Court.
>
> *Pierce* at 882.

We believe the same logic set forth by the Pierce court and the court in *In re Fries*, *supra*, applies in a Chapter 12 context:

> The purpose of that section [1322(c)] is to protect debtors from involuntary participation in Chapter 13. Confirmation issues relating to creditor dissatisfaction with the amount of the dividend on unsecured claims or doubts about the plan's feasibility involve determinations which are better made under other Code provisions.
>
> *Fries* at 680.

■ As long as the plan meets the requirements of § 1225 and absent a voluntary extension or some showing of cause, the debtors cannot be forced to submit their disposable income to the plan for a period longer than three years. Here, there has been no showing of cause nor any allegation of bad faith and the debtors have not proposed an extension.

Accordingly, for the reasons stated above, the objections of Liberty Savings Bank, F.S.B., to the Chapter 12 plan of Charles and Linda Gossett are hereby overruled and the plan, amended to conform with the changes made orally at the April 11, 1988 hearing, is confirmed.

So Ordered.