In re James C. WELCH, Betty F. Welch, Debtors.

Bankruptcy Nos. 3–86–03256, 3–87–00186.

United States Bankruptcy Court, S.D. Ohio, W.D.

May 29, 1987.

Ray A. Cox, Dayton, Ohio, for Farm Credit Services.

Jennings Hurt, Dayton, Ohio, for Federal Land Bank of Louisville.

Richard Goettke, Mt. Orab, Ohio, for debtors.

Steven Fansler, West Liberty, Ohio, Trustee.

## DECISION AND ORDER DENYING MOTIONS TO DISMISS

WILLIAM A. CLARK, Bankruptcy Judge.

This matter came before the court in cases filed by James and Betty Welch which were consolidated for the hearing on motion to dismiss filed in each case by Farm Credit Service of the 4th District, formerly known as Miami Valley Production Credit Association, and the Federal

Land Bank of Louisville. Each of the movants is a secured creditor.

Each creditor grounds its motion upon the alleged failure of the debtors to qualify as "family farmers" under the new chapter 12 of the United States Bankruptcy Code. The definition of "family farmer" is contained at 11 U.S.C. § 101(17)(A) which reads in part:

> (A) individual or individual and spouse engaged in a farming operation whose aggregate debts ... on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed;

## PROCEDURAL POSTURE

Debtors filed separate petitions. James C. Welch filed his petition, pro se, on December 11, 1986. After a consultation with a lawyer, Betty Welch filed her petition on January 22, 1987. Each debtor now has the same counsel. At request of counsel the court granted the motion for the cases to be consolidated and to be administered jointly. A joint plan was filed under chapter 12 by the debtors on March 11, 1987. Farm Credit Service filed its Motion to Dismiss on March 17, 1987 and the Federal Land Bank of Louisville filed its Motion to Dismiss on March 30, 1987. At the Confirmation Hearing it was determined that the motions to dismiss must be resolved before the matter of the confirmation of the plan may be considered. At an evidentiary hearing on the motions to dismiss, evidence was presented and arguments of counsel were made to the Court on the issue of the eligibility of these debtors to be debtors under chapter 12 of the United States Bankruptcy Code.

The filing of the cases by the debtors in different years complicates the rather clear congressional test recited in 11 U.S.C. § 101(17)(A), which requires the individual or individual and spouse to qualify based upon the gross income for the taxable year preceding the taxable year in which the case is filed.

## FACTS

The individual and his spouse had gross income in 1985 as follows:

| | |
|---|---:|
| Farm income (including Agricultural Program payments of $23,019.31) | $115,816.25 |
| Betty Welch, Teacher's Salary | 27,980.00 |
| | $143,796.25 |
| Rental income of residential property | 3,185.00 |
| 1985 TOTAL GROSS INCOME | $146,981.25 |

At the evidentiary hearing on the motions to dismiss the debtors' evidence established their 1986 income to be as follows:

| | |
|---|---:|
| Actual milk money, January, February and December | $ 8,252.02 |
| Grain sold | 1,777.97 |
| Milk—contract with Seymour | 8,400.00 |
| Grain received for moneys advanced for preparation, plant, seed, fertilizer | 15,000.00 |
| Crops—contract with Seymour | 5,500.00 |
| Animals sold | 2,215.00 |
| | $ 41,144.99 |
| Government payments | 4,750.00 |
| | $ 45,894.99 |
| Teacher's salary | 30,000.00 |
| 1986 TOTAL GROSS INCOME | $ 75,894.99 |

## DECISION

This is a case of first impression under the new chapter 12 "family farmer" provisions of the Bankruptcy Code. The two filings by the individual debtors have given the moving secured creditors an illusory opportunity to question the debtors' eligibility under chapter 12.

 The Court is able to clear the tangle of procedural underbrush by recognizing that the cases have been consolidated and the debtors are married. Procedurally the first filing should be considered the filing for the consolidated cases. However, as will be shown, whether the filing is in 1986 or 1987 does not produce a different result on the issue of the eligibility of these debtors to file as "family farmers" for the protection of chapter 12. The income test is to be applied to the individual and spouse at the time of filing. There was no credible

evidence presented at the hearing to challenge the eligibility of James C. and Betty Welch if their filing had been in 1986. The 1985 tax return presented at the hearing as defense Exhibit "A" clearly demonstrates that the individual and his spouse had farm income of more than fifty percent (50%) of the gross income of the couple for that year.

It is apparent that in 1985 the gross income of the individual and his spouse received from a farming operation of $115,-816.25 was more than fifty-percent (50%) of $146,981.25, being the total gross income of the individual and his spouse. The fifty percent (50%) threshold is met even if the government program payment of $23,-019.31 is deducted from farm income.

Next we consider the qualification of the Welches if the filing of their cases is in 1987. This review requires an examination of the gross income of the "individual and spouse" for 1986. The creditors at the hearing cross-examined James Welch concerning his statement at his § 341 meeting that he had received no income from farming in 1986. The court finds James Welch's explanation credible as he gave detailed testimony of his income for the year 1986 at the evidentiary hearing. From that testimony we learned that James Welch operated his milk operation solely for two months and part of a third during the year 1986. He received all of the milk money for January, February and a part of December totalling $8,252.02. For the remainder of the year James Welch did about one-third of the milking and received $8,400 from milk proceeds for that work on a contract with his son-in-law. He sold grain, receiving the proceeds of $1,777.97. James Welch prepared the ground, planted the crop and used seed and fertilizer and was reimbursed in grain or cash of $15,000 when the grain was sold in the fall. On a contract with his son-in-law, Seymour, he received $5,500 for allowing Seymour to use his land. He sold animals resulting in sale proceeds of $2,215. His total receipts for 1986 for the above were $41,144.99. As a participant in the government program he received as a deficiency payment, based upon the low price of corn,

the sum of $4,750. The aggregate total of these receipts is $45,894.99. During the year 1986 Betty Welch received compensation for teaching in the Mechanicsburg School District the sum of $29,000 to $30,-000.

The Court finds invalid the creditors' contention that the contract to share milk proceeds is not dairying, that repayment for his work and expense in planting, seeding and fertilizing the crop was not tilling the soil, that his receipt of $5,500 for the use of his land was not farming. Because it is not determinative and unnecessary to this decision, the Court refrains from the inclination to find Welch's participation in and receipt of government deficiency payments, so common to farmers presently, are part of a "farming operation". The total farm receipts, exempting the government payment and the teacher's salary, received from the farming operation in the year 1986 by the Welches is more than fifty-percent (50%) of the gross income of the individual and spouse for that year.

Had the debtors filed jointly in 1986, it is mathematically clear that they would qualify as debtors to seek relief of chapter 12 of the Bankruptcy Code. If the filing had been a joint filing in 1987, an analysis of the income of the debtors provides the same result. These debtors filing separately are eligible to file under chapter 12 within the definition of "family farmer" and "farming operation" as those terms are defined in the code. The code defines a "family farmer" to be an "individual" or an "individual and spouse".

"Family Farmer" as defined in 11 U.S.C. § 101(17)(A) requires that an individual and spouse receive more than fifty-percent of gross income from a "farming operation" in the taxable year immediately preceding the year of filing the petition. The facts above demonstrate these debtors are family farmers within the definition of the code at the time of filing, whether it be in 1986 or 1987. The definition of "farming operation" at 11 U.S.C. § 101(20) is as follows:

"farming operation" includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state.

With some relish the court has accepted the task of construing the intention of Congress in the above section defining a "farming operation" to include, "farming" followed by the traditional description of work recognized as describing a farming operation. Congress, in its wisdom, used the word "farming" as the first of its examples in the description of what was a "farming operation".

*Webster's New Collegiate Dictionary* (1979) defines "farm," the verb, as follows:

Farm *vt* 1 *obs:* Rent 2: to collect and take the fees or profits of (an occupation or business) on payment of a fixed sum 3: to give up (as an estate or a business) to another on condition of receiving in return a fixed sum 4. a: to devote to agriculture b: to manage and cultivate as a farm—*vi:* to engage in raising crops or livestock.

To consider the legal definition of the verb "farm", see *Black's Law Dictionary* (4th ed. 1968):

Farm, v. To lease or let; to demise or grant for a limited term and at a stated rental.

The above dictionary definitions for "farming" support the conclusion that the Welchs' farmed in 1986 when they "farmed out" some of the milking and much of the grain production. This conclusion has support in an older case, *First State Bank of Stratford, Texas vs Roach*, 124 F.2d 325 (5th Cir.1941). The Court held that a frail, injured woman was "a farmer" under the bankruptcy law extant in 1931 when she personally hired, cooked for and paid farm hands and occupied a shack on the farm for part of the time. The Court found the woman was not merely managing property in her activity on the farm.

The legislative history to chapter 12 indicates that the chapter was created "in response to the tremendous hardship that has afflicted many segments of the farm community with the large resulting number of bankruptcies." 132 Cong.Rec. S15091 (daily ed. Oct. 3, 1986) (statement of Sen. DeConcini) and is "consistent with the objective of helping family farmers to keep their farms and satisfy creditors out of future earnings." 132 Cong.Rec. H9001 (daily ed. Oct. 2, 1986) (statement of Rep. Fish). The legislative history makes clear that "[t]hough the purpose is to give family farmers a fighting chance to reorganize their debts, the provisions ensure that only family farmers—not tax shelters or large corporate entities—will benefit." 132 Cong.Rec. S15076 (daily ed. Oct. 3, 1986) (statement of Sen. Grassley).

The Welches bought their land in the early 1970's. The wife, Betty Welch, has taught school for nearly thirty (30) years, during which time she supplemented the farm income. She has, however, as a farm wife, been involved in the work at the farm where the debtors live. James Welch has operated his farming operation on their jointly owned land for nearly fifteen (15) years. He has engaged in dairy farming, grain farming, has participated in government programs designed to encourage avoidance of crop surpluses and conservation. James Welch has worked as a farmer, worked their own farm land, and suffered the severe financial distress common to many farmers. To hold that he is anything other than a "family farmer" would be a travesty upon and a trampling of the intention of Congress as defined by the legislative history of the chapter 12 legislation.

For all of the reasons stated above, the Court concludes the Welches are "family farmers" and entitled to seek the protection of chapter 12 of the Bankruptcy Code. The Welches as individual and spouse are "family farmers". Whether they have the annual income to fund their plan will be determined at the confirmation hearing.

The motions to dismiss filed by the moving secured creditors are DENIED and other proceedings filed in this case will proceed to hearing.

IT IS SO ORDERED.