**In re C. Gary SHEPHERD and Janice Shepherd, Debtors.**

**Bankruptcy No. 86–02797.**

United States Bankruptcy Court, N.D. Ohio, W.D.

June 16, 1987.

Michael E. Gilb, Lima, Ohio, for debtors.

Suzanne Cotner Mandross, Toledo, Ohio, Trustee.

John J. Hunter, Toledo, Ohio, for Federal Land Bank.

### MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on Federal Land Bank of Louisville's Motion to Dismiss pursuant to 11 U.S.C. § 1208. A Hearing was held on this matter, at which time Federal Land Bank, the Debtor, and the Chapter 12 Trustee presented the evidence and arguments they wished the Court to consider. The parties were given the opportunity to file additional written arguments after the Hearing. The Court has reviewed the written arguments of counsel, and the entire record in this case. Based on that review, and for the following reasons, the Court finds that Federal Land Bank's Motion to Dismiss should be denied.

### FACTS

The facts in this case do not appear to be in serious dispute. C. Gary Shepherd and Janice Shepherd filed for relief under Chap-

ter 12 of the Bankruptcy Code on December 31, 1986. In addition to working on the farm, Mr. Shepherd is also employed as a machinery repairer at Ford Motor Co.

In 1985, the Shepherds' farm income and non-farm income were very close in amount. The characterization of Agricultural Stabilization and Conservation Service, (hereinafter "ASCS") program payments would be determinative in deciding whether the Shepherds meet the 50% gross income test of 11 U.S.C. § 101(17)(A) for the year 1985.

In 1986, the Debtors sold substantially all their farm machinery. The characterization of the proceeds of that sale would be pivotal in determining whether the Debtors meet the 50% gross income test in 1986.

## LAW

"Family farmer" is defined in 11 U.S.C. § 101(17)(A), which states in pertinent part:

(17) "family farmer" means—

(A) individual or individual and spouse engaged in a farming operation ... and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed ...

■ The Court's initial inquiry must focus on the issue of the appropriate year in which to apply the gross income test of 11 U.S.C. § 101(17)(A). In the present case, the Debtors filed their petition on December 31, 1986. Accordingly, under a strict reading of § 101(17)(A), the Debtors' eligibility to continue in Chapter 12 should be based on the Debtors' income in 1985, the year preceding the taxable year in which the case was filed. Federal Land Bank argues that because the Debtors filed on the last day of the year, the intent of Congress could be better served by looking to 1986 as the appropriate year for determining whether or not the Debtors are farmers. Recently, statutory construction of Chapter 12 has been an active area of the law in connection with attempts to con-

vert cases to Chapter 12. It appears that the majority view holds that unless there is ambiguity, statutory construction and legislative history should not be used to alter the clear requirements of the statute. *See, e.g. In re Rossman,* 70 B.R. 985, 988 (Bankr.W.D.Mich.1987) (no conversion to Chapter 12). As there is no ambiguity in the definition section, the Court should use the Debtors' gross income from farming operations in 1985. *Potmesil v. Alexandria Production Credit Ass'n,* 42 B.R. 731, 733 (W.D.La.1984) (plain meaning to be applied in interpreting § 101(17), and Court looked to 1982 gross income for case filed on September 16, 1983); *In re Welch,* 74 B.R. 401 (Bankr.S.D.Ohio 1987) (looked to 1985 gross income for case filed December 11, 1986).

Notwithstanding the above conclusion of law, the Court will examine the Debtors' gross income for both 1985 and 1986. It appears that the Debtors meet the 50% farm income test in both years, and a determination for both years could serve to expedite the final resolution of this matter.

For the 1985 tax year, the characterization of the ASCS program payments as farm income or non-farm income is determinative of the Debtors' status as "family farmers" under the definition section of the Bankruptcy Code. In their brief, the Debtors provided the following chart showing their income.

### 1985 TAX YEAR

| Farm Income | | % of Total |
|---|---|---|
| Total Grain Sales | 56,276 | |
| ASCS Payments | 8,438 | |
| Other Farm Income | 484 | |
| Total Farm Income | 63,198 | 50.3% |
| | | |
| Non-Farm Income | | |
| Interest Income | 103 | |
| Dividends | 67 | |
| Wages | 62,175 | |
| Total Non-Farm Income | 62,845 | 49.7% |
| **TOTAL INCOME** | 125,543 | 100% |

As the chart shows, if the ASCS payments are not included as farm income, the Debtors will not meet the 50% test of § 101(17)(A).

Federal Land Bank argues that the ASCS payments were paid to the Shepherds for not farming, and therefore the payment should not be considered farm income. While Federal Land Bank's argument is a reasonable one, it is not supported by the case law.

The gross income test is used in the definition of "farmer" as well as "family farmer". While the percentages used in the definitions are different, both tests use gross income from farming operations, and should be accorded the same meaning. In *In re Etheridge* 68 B.R. 235 (Bankr.C.D.Ill. 1986), one of the issues was whether the Debtor was a "farmer" under the gross income test of the former section 101(17), which was moved to § 101(19) by the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986. In applying the gross income test the Court apparently accepted the Schedule F of the Debtors' income tax return, which includes a section for agricultural program payments under the heading "farm income". It should be noted that the Court does not discuss the reasons for the inclusion of the payments. However, the Court of Appeals for the Seventh Circuit does appear to provide support for the *Etheridge* Court in a decision that was rendered two days after *Etheridge*.

In *In re Wagner*, the Court of Appeals held that the term "gross income" was to be given the same meaning in the Bankruptcy Code as it is in the federal income tax laws. *In re Wagner*, 808 F.2d 542 (7th Cir.1986). While the *Wagner* decision focused on a somewhat different problem, the treatment of withdrawals made from the Debtors' IRA account, the use of federal income tax law to interpret the definitional section is also applicable to the case at bar. As *Wagner* states:

"Often and here creditors know a fair amount about their debtor's income ... and can readily determine what his gross income for tax purposes was last year and how much of it came from farming; if they don't know, and file a petition for involuntary bankruptcy, and in fact the debtor derives more than 80 percent of his gross income (in the tax sense) from farming, the debtor will quickly tell them, *and prove it by his tax return.* But for either creditor or debtor to decide what the debtor's gross income is in some sense of "gross income" that is significant for the policy of the bankruptcy law would be an altogether more uncertain undertaking, at least until the courts had evolved a jurisprudence of gross income for this purpose. The threshold determination of eligibility for the exemption should not be subject to such uncertainty. Debtors and creditors ought to be able to know from the start whether the debtor is exempt from bankruptcy; they would not know till much later if we embarked on the protracted undertaking of constructing, in common law manner, case by case, a new jurisprudence of gross income. *Wagner, supra* at 547 (emphasis added)"

The definition of farmer has evolved from the early "mud on the boots" approach to the current gross income tests for "family farmer" and "farmer" under 11 U.S.C. § 101(17)(A) and § 101(19). *See In re Blanton Smith Corp.,* 7 B.R. 410 (Bankr.M.D.Tenn.1980). The *Wagner* Court notes that the gross income test is mechanical, arbitrary and not designed to reflect the economic realities of agriculture. *Wagner, supra* at 547. However, a mechanical test also has a virtuous side. It provides certainty, and uniformity of application which can decrease litigation and its attendant costs, while speeding the resolution of preliminary eligibility issues. As quoted above, the *Wagner* Court pictures a test which can look to the Debtors' tax return to resolve most issues. This approach appears to be especially well suited to a provision such as Chapter 12 which sunsets in less than six years. Rather than developing an intricate jurisprudence on the subject, the Court would be better served by using, to the extent it is reasonable to do so, the Schedule F or other appropriate Schedules, of the Debtors' tax return.

Two and a half months later, the Seventh Circuit Court of Appeals issued a second Opinion dealing with the gross income from

**504**

farm production test. *Matter of Armstrong*, 812 F.2d 1024 (7th Cir.1987). The *Armstrong* case does not cite, nor mention in any way, the *Wagner* decision. The *Armstrong* Court also did not employ a federal income tax law analysis to the issues presented. Instead, the Court looked to the absence of the "traditional risks" of farming, and the close relationship between items sold and the farming operation. *Armstrong, supra* at 1026.

While *Armstrong* does present a convincing rationale for treating some capital gains transactions as farm income, it should be noted that in analyzing whether ordinary income is farm or non-farm, a tax based analysis would produce the same result reached in *Armstrong*. In deciding the cash rent issue, the Court found that the renting of land did not involve the traditional risks associated with farming, and should not therefore, be considered farm income. This holding would be consistent with a tax based analysis under 26 C.F.R. § 1.1402(a)–4. The Code of Federal Regulations states that the rental of land is not farm income unless the "landlord" materially participates in the production of agricultural or horticultural comodities. *See* 26 C.F.R. § 1.1402(a)–4. It seems that a "risk" standard and a "material participation" standard would produce very similar results in practice.

The other issue which the *Armstrong* Court addressed was the treatment of proceeds from the sale of farm machinery outside the ordinary course of business. Such a sale would result in capital gains under the Internal Revenue Code, and would be excluded from the self-employment tax calculation. *See* 26 C.F.R. § 1.1402(a)–6. It would not, in other words, appear as farm income on the Debtors' Schedule F. The *Armstrong* Court specifically states that the sale of farm equipment is farm income because it was *not* made in the ordinary course of business. This is directly contrary to the provisions of the tax regulations, which would include the sale of equipment in the self-employment calculation only if it *were* in the ordinary course of business. 26 C.F.R. § 1.1402(a)–6. As the Court of Appeals

points out, to hold that proceeds from a sale of farm machinery was not farm income would result in the exclusion of farmers who have merely scaled back their operations, even though they had no other source of income. The Court also noted that many Courts have held that the "tools of the trade" exemptions extend to farm equipment because they are part of the farming operation.

Finally, it should be recognized that, as a practical matter, the Schedule F is the most reliable and readily available guide to the Court. Because the Court is viewing the Debtors' previous tax year, the tax return will often have been filled out without regard to the bankruptcy consequences of the income characterization. Moreover, the Debtor is constrained by the I.R.S.'s view of the proper characterization. While the self-employment tax criteria were not formulated for this purpose, it is the best criteria the Bankruptcy Court has at the moment, and may be the best it is likely to get for separating ordinary income into "farm" and "non-farm".

■ Consequently, this Court will accept the tax code definition of "gross income" in interpreting that term as it is used in the definition section of 11 U.S.C. § 101. This Court will also accept the Schedule F, and its criteria for designating ordinary income as "farm" or "non-farm". In characterizing capital gains, the Court will examine the relationship of the property sold to the farming operation.

■ Returning to the question of the proper characterization of the ASCS program payments, under the standard set forth above, they are properly considered farm income. In support of this finding, the Court notes two recent cases on the subject, *In re Welch*, 74 B.R. 401 (Bankr.S. D.Ohio 1987) (would find agricultural program payments to be farm income) and *In re Nelson*, 73 B.R. 363 (Bankr.Kan.1987) (Court looked to Debtors income tax return for farm gross income test in Chapter 12). The Court also notes that the Debtors have affirmative duties under their ASCS contracts with the federal government. The

land must be maintained to prevent erosion.

Finally, in *In re Cupp*, this Court held that Payment-In-Kind program payments were proceeds for purposes of a security agreement in the proceeds of crops. *In re Cupp*, 38 B.R. 953 (Bankr.N.D.Ohio 1984).

Next, turning to the question of the proceeds from the sale of the farm machinery, they are also properly considered farm income. The Federal Land Bank cites one case for the proposition that the sale should not give rise to farm income. The case is *Armstrong v. Corn Belt Bank*, 55 B.R. 755 (C.D.Ill.1985). This was the District Court decision which was considered by the Seventh Circuit Court of Appeals in *Matter of Armstrong*, 812 F.2d 1024 (7th Cir.1987). While the District Court's decision was affirmed, the Court of Appeals specifically reversed that part of the decision which held the sale of farm machinery to be non-farm income.

Federal Land Bank also argues that the sale of all the Debtors' farm machinery should be treated differently than a partial sale. The Court disagrees. First, it is a very difficult line to draw between sale of "some", "most", or "all" of the Debtors farm machinery. Second, the Debtors' decision to sell all, or almost all machinery can be irrelevant as to whether the Debtors are "really" a farmer. Machinery may be leased, or borrowed from neighbors. And, finally, the distinction does not appear to be one the Seventh Circuit or other courts are likely to adopt. The primary interest of this Court is in the uniform and certain application of a mechanical test, not carving out exceptions to existing case law.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is ORDERED that the Motion of Federal Land Bank to Dismiss this case should be and hereby is DENIED.