**In the Matter of Vaughn B. FABER, Patricia L. Faber, Engaged in Farming, Debtors.**

**Bankruptcy No. 87–509–C.**

United States Bankruptcy Court, S.D. Iowa.

Oct. 20, 1987.

Deborah S. Krauth, Chariton, Iowa, for debtors.

Elizabeth A. Nelson, Des Moines, Iowa, Chapter 12 trustee.

Linda R. Reade, Asst. U.S. Atty., Des Moines, Iowa, for the U.S.

David L. Davitt, Des Moines, Iowa, for the Bank.

### ORDER ON CREDITOR'S MOTION TO DISMISS DEBTORS' CHAPTER 12 BANKRUPTCY

LEE M. JACKWIG, Bankruptcy Judge.

A motion to dismiss debtors' Chapter 12 bankruptcy, filed by the First National Bank of Kirksville, Missouri, was set for hearing on July 21, 1987. At that time, attorneys for the parties indicated that the issues involved had been narrowed to an issue at law only and that the taking of evidence was not necessary. The parties have stipulated to the facts relevant to the issue and have filed briefs on the issue. Debtors are represented by Deborah S. Krauth and the Bank is represented by David L. Davitt. The court considers the matter fully submitted.

### FACTUAL BACKGROUND

The debtors filed for protection under Chapter 12 of the Bankruptcy Code on February 27, 1987. First National Bank filed a motion to dismiss the bankruptcy case on July 16, 1987, alleging that the debtors are not "family farmers" within the meaning of 11 U.S.C. § 101(17)(A) and therefore are ineligible to seek protection under Chapter 12 of the Bankruptcy Code. 11 U.S.C.

§ 101(17)(A) limits the definition of family farmers to include only those debtors who received more than 50 percent of their *gross income* in the preceding taxable year from farming operations.

Debtors were engaged in two businesses—farming and trucking—during the 1986 tax year. The debtors' *gross income* from farming for that year was $22,550.36. His share of *gross receipts* from the trucking operation for the year was $72,713.93. The debtor had "costs of operation" expenses for the trucking operation of $56,273.31 for the year. These costs included: $4,035.59 for repairs; $3,815.68 for taxes and license; $22,921.21 for fuel; $607.35 for tolls; $867.53 for fuel permits; $480.00 for unloading charges; $354.21 for washing; $160.08 for weighing; $86.33 for advertising charges; $159.17 for shipping charges; $1,821.09 for tires; $133.50 for fuel bonds; $143.92 for claims; $16,679.52 for equipment depreciation; and $4,008.33 for contract labor. Subtraction of these costs of operation from gross receipts leaves an amount of $16,440.62.

## DISCUSSION

Debtors assert that in computing gross income from the trucking operations they are entitled to deduct the above listed "costs of operations" from *gross receipts*. Such a deduction would result in their satisfying the income test and otherwise qualifying as a "family farmer". The Bank asserts that no such deduction is allowable because the trucking operation was a "service" rather than a "manufacturing" operation, and therefore, the gross receipts figure also represents gross income. If the Bank is correct, the debtors do not meet the 50% test of 11 U.S.C. § 101(17)(A).

■ Gross income is not defined in the Bankruptcy Code. Thus, this court must look elsewhere to determine what Congress intended the phrase to encompass. In this case, both parties have looked to the Internal Revenue Code for the answer. It is arguable that "gross income" for the purpose of determining Chapter 12 eligibility should be given the same meaning that term has under federal income tax law.

See *Matter of Wagner*, 808 F.2d 542 (7th Cir.1986). Yet, a strict tax code approach should be modified or abandoned in those cases in which a tax code solution would be absurdly irreconcilable with the Chapter 12 statutory provisions and legislative history. This is not such a case. Rather, the tax code analysis is compatible under the present set of facts with Chapter 12's primary purpose—to assist family farmers to continue farming.

■ Pursuant to section 61 of the Internal Revenue Code, gross income includes "gross income derived from business". The statutory section does not specifically define "gross income derived from business." 28 U.S.C. § 61. However, Treasury Regulation § 1.61–3(a) provides that "[i]n a manufacturing, merchandising, or mining business, 'gross income' means the total sales less the cost of goods sold.... Gross income is determined ... without subtraction of selling expenses, losses or other items not ordinarily used in computing costs of goods sold...." On the other hand, "where a business is engaged primarily in the providing of a service, rather than mining, manufacturing, or merchandising, the business gross receipts will constitute gross income." *Guy F. Atkinson Co. of California and Subsidiaries v. Commissioner of Internal Revenue*, 82 T.C. 275, 298 (1984), *aff'd on other grounds* 814 F.2d 1388 (9th Cir.1987).

Debtors argue that if the court does adopt the distinction between service businesses and merchandising, mining and manufacturing businesses, their trucking operation should be categorized as a mining, manufacturing or merchandising business because trucking "is very capital intensive." Debtors cite no authority and this court can find none for the proposition that the amount of capital involved is a determinative factor.

The most relevant case addressing the distinction appears to be *Hahn v. Commissioner of Internal Revenue*, 30 T.C. 195 (1958) *aff'd* 271 F.2d 739 (5th Cir.1959), wherein the tax court held that a person who operated a blacksmith and welding shop was primarily engaged in the provid-

ing of service rather than in manufacturing. 30 T.C. at 198. The court held that:

> Hahn was not engaged in the manufacturing business. The record as a whole makes it clear that what John Hahn was selling, for the most part at least, was not a material product to which direct costs could be allocated as in the case of a manufacturing business, but rather that he was selling services, consisting of his ability, know-how, and experience as a blacksmith and welder....

Id. at 198.

This court finds that the debtors are in a similar position with regard to the trucking operation. They are not primarily engaged in manufacturing a product but instead are providing a service. Debtors reliance on *Lela Sullenger,* 11 T.C. 1076 (1948) is misplaced. That case deals with the constitutionality of taxing various items. No one disputes that debtors are entitled to deduct the "costs of operations" from gross income in computing taxable income. Indeed, the provisions of the tax code defining how taxable income is computed provide additional evidence that the debtors' "costs of operations" are not deductible from gross receipts in computing gross income.

For example, 26 U.S.C. § 62 defines *adjusted gross income* as *gross income* minus those trade and business deductions allowed under Chapter 1 of the Internal Revenue Code. Included among the deductions in Chapter 1 are deductions for salaries and traveling expenses and deductions for depreciation expenses. 26 U.S.C. §§ 162, 167. Thus, since those items are deducted from gross income in determining adjusted gross income, it is logical and necessary that they be included in gross income.

### CONCLUSION AND ORDER

WHEREFORE, based on the foregoing analysis, it is hereby found that debtors' "costs of operations" are not deductible from gross receipts in computing the gross income of the trucking operation. Accordingly, it is also found that less than 50% of the debtors' total gross income in 1986 was derived from the farming operation, meaning that debtors do not qualify as family farmers pursuant to 11 U.S.C. § 101(17)(A).

THEREFORE, the debtors' Chapter 12 bankruptcy is hereby dismissed.