In the Matter of Paul M. SCHAFROTH,
Mary L. Schafroth, Engaged in
Farming, Debtors.

In the Matter of Russell GOLDSMITH,
Janet Jane Goldsmith, Engaged in
Farming, Debtors.

Bankruptcy Nos. 87–252–C, 87–253–C.

United States Bankruptcy Court,
S.D. Iowa.

Dec. 23, 1987.

Mark S. Lorence, Des Moines, Iowa for debtors.

Steven H. Krohn, Council Bluffs, Iowa for the Bank.

Elizabeth A. Nelson, Trustee, Des Moines, Iowa.

## ORDER ON MOTIONS TO DISMISS

LEE M. JACKWIG, Bankruptcy Judge.

On April 9, 1987 motions to dismiss filed by the Okey Vernon First National Bank (Bank) on March 19, 1987 and the trustee on March 31, 1987 came on for hearing in Des Moines, Iowa. Steven H. Krohn appeared on behalf of the Bank, Elizabeth A. Nelson, the Chapter 12 trustee, was present and Mark S. Lorence appeared on behalf of the debtors. The case has been submitted on a stipulation of facts and briefs.

### FACTS

1. The debtors filed petitions for relief under Chapter 12 on February 2, 1987.

2. The debtors are officers, directors and shareholders of Bluridg Farms, Inc., a corporation that has filed for protection under Chapter 12 in this district (Case No. 87–251–C).

3. The debtors own no real estate except for small parcels upon which they reside. Likewise, the debtors own no machinery, equipment, livestock or crops or any other personal property used in farming.

4. The debtors operate Bluridg Farms, Inc. They manage and provide labor for the corporation.

5. The debtors have not received any income from the sale of livestock, grain or any other agricultural commodity during the last three years.

6. There is no indication that the debtors have received wages or dividends from the corporation in 1986.

### DISCUSSION

■ The sole issue before the court is whether the debtors qualify as "family farmers" for purposes of Chapter 12. Only family farmers with regular income are eligible for protection under Chapter 12. 11 U.S.C. section 109(f). A family farmer is defined, in part, as follows:

[An] individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed....

11 U.S.C. section 101(17)(A). The trustee and the Bank contend that the debtors fail to meet any of the statutory criteria.

The Bank maintains that the debtors are not engaged in a farming operation. Specifically, the Bank contends that being employed by a corporation is not enough—that the debtors, as employees, are not subjected to the risks inherent in farming. 11 U.S.C. section 101(20) defines farming operation as including "farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or live-stock, and production of poultry or live-stock products in an unmanufactured state." There is no dispute that the debtors actually perform farming activities such as tilling the soil and raising livestock. The question is whether the debtors' status as employees removes them from the ambit of section 101(20) and, concomitantly, of section 101(17)(A).

A number of cases have examined the meaning of "farming operation" in general and as it relates to the income test found in section 101(17)(A). This court in *Matter of Burke*, 81 B.R. 971 (Bankr.S.D.Iowa 1987) reviewed some of those cases and determined that the decisions generally have fallen along two lines. One line of cases, represented by *Matter of Armstrong*, 812 F.2d 1024 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 287, 98 L.Ed.2d 248 (1987), views "farming operation" narrowly. For the *Armstrong* majority, a critical question is whether the activity under consideration exposes the debtor to the risks inherent in agricultural production. The other line of cases interprets "farming operation" in a broader fashion. Those courts look to the "totality of the circumstances" in determining whether the debtors or the family members or relatives in the case of a corporation or partnership are engaged in farming and whether, in the case of an individual or an individual and spouse, the income test is met. This court adopted the latter approach in the *Burke* decision.

■ The record in this case indicates that the debtors are engaged in a farming operation. The debtors operate and manage the debtor corporation. The debtors perform traditional farming activities for Bluridg Farms, Inc. They are the officers, directors and shareholders of the debtor corporation.

■ The trustee and the Bank contend that the debtors did not receive more than 50 percent of their gross income from a farming operation for the taxable year preceding the taxable year in which their case was filed. The debtors argue that even though they have no reportable gross in-

come from farming for the relevant year, the corporate income should be attributed to them for purposes of section 101(17)(A) since the corporation qualifies for Chapter 12.[1]

The term "gross income" is not defined in the Code. The trustee asserts that "gross income" should be given the same meaning that it has under federal tax law. The Seventh Circuit Court of Appeals in *Matter of Wagner*, 808 F.2d 542 (7th Cir. 1986) defined "gross income" as set out in former 11 U.S.C. section 101(17)[2] in such a manner. The issue before the *Wagner* court was whether a debtor was a "farmer" under section 101(17) and thus was immune from being forced into involuntary bankruptcy by virtue of 11 U.S.C. section 303(a). The court found that an $18,000.00 withdrawal from an IRA account was not farm income but was includable in the debtor's "gross income". Consideration of the $18,000.00 in nonfarm income put the debtors below the statutory 80 percent threshold and thus they were denied farmer status.

This court has utilized a tax law meaning of "gross income" in determining Chapter 12 eligibility. *Matter of Faber*, 78 B.R. 934 (Bankr.S.D.Iowa 1987). However, this court cautioned that "a strict tax code ap-proach should be modified or abandoned in those cases in which a tax code solution would be absurdly irreconcilable with the Chapter 12 statutory provisions and legislative history." *Id.* at 935.

The central question herein is whether the corporation's income should be included in the debtors' "gross income" as defined in 26 U.S.C. section 61(a). "Gross income" is defined in the tax code as "all income from whatever source derived...." 26 U.S.C. section 61(a). Generally, a corporation and its stockholders are treated as separate entities. *Burnet v. Clark*, 287 U.S. 410, 415, 53 S.Ct. 207, 208, 77 L.Ed. 397 (1932). This separate treatment applies to tax considerations. *New Colonial Co. v. Helvering*, 292 U.S. 435, 442, 54 S.Ct. 788, 791, 78 L.Ed. 1348 (1934). Ordinarily, shareholders of a corporation are not taxed on the earnings of the corporation unless a distribution such as a dividend is made. *Estate of Putnam v. Commissioner*, 324 U.S. 393, 400, 65 S.Ct. 811, 814–15, 89 L.Ed. 1023 (1945). Income from a closely held corporation that qualifies as a subchapter S corporation passes through the corporation to the shareholders. Subchapter S income must be taken into account in determining the shareholders' tax liability. 26 U.S.C. 1366(a).[3]

1. The eligibility standards for corporations or partnerships seeking Chapter 12 protection are set out in 11 U.S.C. section 101(17)(B) which provides that a family farmer means:

> a corporation or partnership in which more than 50 percent of the outstanding stock or equity is held by one family, or by one family and the relatives of the members of such family, and such family or such relatives conduct the farming operation, and
> (i) more than 80 percent of the value of its assets consists of assets related to the farming operation;
> (ii) its aggregate debts do not exceed $1,500,000 and not less than 80 percent of its aggregate noncontingent, liquidated debts (excluding a debt for one dwelling which is owned by such corporation or partnership and which a shareholder or partner maintains as a principal residence, unless such debt arises out of a farming operation), on the date the case is filed, arise out of the farming operation owned or operated by such corporation or such partnership; and
> (iii) if such corporation issues stock, such stock is not publicly traded;

2. 11 U.S.C. section 101(17) as analyzed by the *Wagner* court now appears at 11 U.S.C. section 101(19) and defines a farmer as a "person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under such title concerning such person was commenced from a farming operation owned or operated by such person."

3. Legislation creating the subchapter S corporation was enacted to allow small business owners and farmers to select the type of business organizations without regard to differences in tax consequences. *See generally*, 7 Harl, *Agricultural Law*, section 56.01. Code provisions governing subchapter S corporations are found at 26 U.S.C. sections 1361–1379. To qualify for subchapter S status, the corporation must be a domestic corporation, not have more than thirty five shareholders, not have a nonindividual as a shareholder, not have a nonresident alien shareholder and not have more than one class of stock. 26 U.S.C. section 1361(b).

There is no evidence in this case clearly setting forth the corporate nature of Bluridg Farms, Inc. The corporation's income would be attributable to the debtors if Bluridg were a subchapter S corporation.[4] No tax documents have been presented which show the gross income of a subchapter S corporation or the debtors' proportional share of items attributed to the shareholders.[5] Therefore the court cannot determine whether Bluridg is a subchapter S corporation or a regular corporation (known in tax parlence as a subchapter C corporation). Assuming Bluridg was a subchapter C corporation, its income would not be attributable to the debtors unless a distribution were made. No evidence has been presented which shows such a distribution.

This court addressed the issue of whether wages, fees or payments may constitute income from a farming operation:

> Wages, fees or payments that result from a farming activity and relate to the farming operation will usually be farm income in the case of an individual or individual and spouse. "Farming activity" will be liberally construed but must somehow relate to the debtor's farming operation, not the farming operation of others. An individual debtor "engaged in a farming operation" of a family related farm corporation or partnership may claim wages from such entity as farm income absent a showing of abuse of Congressional intent.

*Matter of Burke*, 81 B.R. 971, at 977 (Bankr.S.D.Iowa 1987). No showing has been made that the debtors have received any wages, fees or payments that can be considered income derived from a farming operation pursuant to the standard set out in *Burke*.

At the time of the hearing, the debtors did not have the benefit of the *Burke* guidelines. Accordingly, they will be given the opportunity to adduce evidence concerning the corporate nature of Bluridg, whether dividends have been disbursed, whether wages have been paid and, if so, whether the *Burke* criteria have been met.

■ Finally, the court notes that the Bank also argues that the debtors fail to satisfy the debt test of section 101(17)(A) because they do not own or operate the farm. The Bank asserts the corporation owns and operates the farm. Clearly, the corporation owns the farm but the debtors operate the farm. The Bank does not otherwise contest the debt requirement. The debtors' schedules reflect that they are personally liable on many of the corporate debts and that more than 80 percent of their aggregate noncontingent, liquidated debt arises out of the farming operation. Given the status of the present record, the court concludes the debtors have satisfied the debt test of section 101(17)(A).

## CONCLUSION AND ORDER

WHEREFORE, based on the foregoing analysis, it is hereby found that the debtors are engaged in a farming operation.

It is further found that they have not established that more than 50 percent of their income for the taxable year preceding the filing of their Chapter 12 petition is derived from a farming operation.

It is further found, based on the present record, that more than 80 percent of the debtors' aggregate noncontingent, liquidated debt arises from the farming operation.

THEREFORE, a further hearing limited to the income issue shall be scheduled as soon as the court calendar permits.

---

4. Shareholders of a subchapter S corporation report a pro rata share of each item of income, loss, deduction or credit of the corporation. 26 U.S.C. section 1366(a).

5. Normally, income or loss from a subchapter S corporation is shown on Schedule E, Part II of an individual's tax return. Form 1120(S) submitted by a subchapter S corporation shows the income and various deductions of the corporation. A shareholder's proportionate share of income, loss, deduction or credit are set out in Schedule K-1.