**In re Charles FOGLE, Debtor.**

**Bankruptcy No. 87–02977.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

June 17, 1988.

Charles W. Ewing, Columbus, Ohio, for debtor.

H. Buswell Roberts, Jr., Toledo, Ohio, William M. Tarnow, Associate Regional Counsel, Real Estate Operations, The Prudential Ins. Co., Midwest Agr., Inv. Office, Downers Grove, Ill., for Prudential.

Suzanne C. Mandross, Toledo, Ohio, Trustee.

**494**

## OPINION AND ORDER DENYING MOTION TO DISMISS

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the court upon the Prudential Insurance Company of America's motion to dismiss and Debtor's memorandum contra thereto. Upon consideration thereof, the court finds that Prudential motion is not well taken and should be denied.

### FACTS

On December 31, 1987, Debtor filed his petition under chapter 12 of title 11. Stipulation of Facts at 1 (May 12, 1988) (hereinafter Stipulation). Prior thereto, on June 26, 1986, Debtor sold all his farm machinery and equipment to T & P Farms, Inc. (hereinafter T & P). Stipulation at 2. T & P is a corporation owned by Debtor's son; Debtor is not a shareholder, officer or director of T & P and has no ownership interest therein. *Id.*

Prudential Insurance Company of America (hereinafter Prudential) on February 19, 1988 filed the instant motion to dismiss. Prudential in seeking dismissal of Debtor's case, contends that Debtor is not eligible for relief under chapter 12. Prudential maintains that Debtor is not a family farmer with regular annual income as required by 11 U.S.C. § 109(f).

### DISCUSSION

11 U.S.C. § 109(f) states that "only a family farmer with a regular annual income may be a debtor under Chapter 12 of this title." "Family farmer" is defined in subsection (17)(A) of section 101 as an:

individual ... engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80% of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual ... unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual ... and such individual ... receive from such

farming operation more than 50 percent of such individual's ... gross income for the taxable year preceding the taxable year in which the case concerning such individual ... was filed.

Further, farming operation "includes farming, tillage of the soil, dairy farming, ranching, production or raising of corps, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state." 11 U.S.C. § 101(20). This definition is broad as it includes the term "farming." *In re Paul*, 83 B.R. 709, 712 (Bkrtcy.D.N.D.1988). *See also In re Welch*, 74 B.R. 401, 16 C.B.C.2d 1431 (Bkrtcy.S.D.Ohio 1987) (this definition includes "farming" followed by the traditional description of work recognized as describing a farming operation). Lastly, "includes", within this definition, makes the list following this term, non-exhaustive. *Paul*, 83 B.R. at 712.

■ Prudential first contends that Debtor does not qualify for chapter 12 relief as he "is no longer engaged in a farming operation" as required by § 101(17)(A) and as defined by § 101(20). Motion to Dismiss at 5.

In *Matter of Armstrong*, 812 F.2d 1024 (7th Cir.1987), *cert. pending*, the seventh circuit narrowly defined "farming operation" in determining an individual's avoidability of an involuntary case. That court, in considering the definition of farming operation, stated that "[t]he definition does not provide a simple, all-inclusive list of tasks and activity." 812 F.2d at 1026. Rather, the exemption of farmers from involuntary petitions is "steeped in the concept of risks; farmers are caught in a risk ridden enterprise." *Id.* at 1027. *See also In re McKillips*, 72 B.R. 565, 15 B.C.D. 1061, 16 C.B.C.2d 1197 (Bkrtcy.N.D.Ill. 1987) (court considered whether Debtors' profit was at the mercy of the weather or farm economy, and whether the risks normally attendant with a farming operation were present).

However, other courts have afforded "farming operation" a broader definition permitting the court to view the "totality of the circumstances." *Matter of Schafroth,*

81 B.R. 509, 510 (Bkrtcy.S.D.Iowa 1987). *See also In re Paul, supra* (majority of courts adopt totality of circumstances); *Matter of Burke,* 81 B.R. 971 (Bkrtcy.S.D. Iowa 1987) (majority of decisions to date seem to be adopting a totality of the circumstances approach advocated by the *Armstrong* dissent); *In re Rott,* 73 B.R. 366, 15 B.C.D. 1292, 17 C.B.C.2d 381 (this court's beliefs are in line with the dissenting opinion in *Armstrong* that it is appropriate for courts to try to draw realistic distinctions on a case by case basis, focusing on whether the income is essentially derived from a farming operation that is owned or operated by the recipient of the income and that reflects the traditional risks of cyclical and unpredictable income). In *Schafroth, supra,* the court noted that while Debtors performed traditional farming activities, the question was "whether Debtors' status as employees removes them from the ambit of section 101(20) and, concomitantly, of section 101(17)(A)." 81 B.R. at 511. Debtors, in *Schafroth,* owned no real estate, except their residence, and no machinery. *Id.* at 509. Furthermore, they had received no wages or dividends from the corporation and no income from the sale of any agricultural commodity during the year preceding the date of their petition. *Id.* at 510. The *Schafroth* court found that Debtors were engaged in a farming operation as they operated and managed the corporation and were officers, directors and shareholders of the corporation. *Id.* at 510.

In *Burke, supra,* the court set forth a few general guidelines in an effort to give practitioners direction regarding those factors which may be considered by the court in determining whether an individual is engaged in a farming operation, to-wit:

1. leasing out farm land:
2. sale of farm machinery;
3. wages, fees, payments; and
4. income tax returns.

81 B.R. at 976–77.

In the instant case, Debtor states that he "proposes to retain his interest in" his real estate and that "he plans to continue a grain farming operation." Debtor's Chapter 12 Plan at 8 (March 31, 1988). *See also* Stipulation at 2. Debtor further indicates that he will "farm the ground by joint venturing" with T & P wherein T & P "would provide the equipment and input supplies and receive 650% (sic) of the gross proceeds." Chapter 12 Plan at 8.

Applying the narrow definition of the *Armstrong* court to the facts in the instant situation, the court finds that Debtor's profit is dependent on the weather and farm economy; Debtor is at risk. Considering the totality of the circumstances, the court notes that Debtor will be producing agricultural commodities as Debtor's 1988 income projection is based on the production and sale of beans, corn and wheat. Debtor's Chapter 12 Plan at 9. Additionally, T & P will be farming Debtor's real estate. Applying the *Burke* factors, the court notes that Debtor will be farming his land in a joint venture with T & P. Although Debtor has sold his farm machinery, he will continue to farm with T & P. Debtor will receive income based on a percentage of the gross proceeds. Considering both the narrow and broad definition of farming operation, the court finds that Debtor is engaged in a farming operation and has met this requirement for chapter 12 relief.

Prudential also claims that Debtor has "disposed of all the machinery and equipment necessary to conduct a farming operation." Motion to Dismiss at 6. However,

> the court does not believe that farmers forced to partially liquidate assets or temporarily rent out machinery or farmland in an effort to salvage their farm operation, should be foreclosed from seeking relief under chapter 12....

*Rott,* 73 B.R. at 373. The court is not persuaded by this argument.

Prudential next contends that Debtor is without sufficient annual income to enable Debtor to make payments under a chapter 12 plan. Motion to Dismiss at 5. Prudential represents that:

> at the first meeting of creditors, the Debtor testified that his annual income is not sufficient to allow him to meet even his ordinary day to day expenses. In-

stead, he must rely on the income earned by his wife in outside employment. *Id.* at 8.

The first area of concern regarding this assertion by Prudential arises out of the use of testimony given at a § 341 hearing. Section 341(c) prohibits the court from attending the first meeting of creditors at which this testimony was elicited. Additionally, a transcript of that hearing has not been submitted to the court. Furthermore, the purpose of a § 341 hearing is to question the Debtor regarding matters affecting the administration of his case, which may include inadmissible evidence. *See generally* 11 U.S.C. § 341(c); Bankruptcy Rule 2003; 8 *Collier on Bankruptcy* ¶ 2003.04 at 2003–11 (15th ed. 1988); H.R.Rep. No. 595, 95th Cong., 2d Sess. 331 *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6287.

Second, the court notes that Debtor may utilize various sources of income in funding his plan. *See In re Hoskins,* 74 B.R. 51 (Bkrtcy.C.D.Ill.1987) (court analogized definition of § 101(18), family farmer with regular annual income, to requirements for a chapter 13 Debtor of § 109(e), regular income, and stated that Debtors, under both chapters, may utilize various sources of income). However, in projecting income, Debtor may only look to the income resulting from his own individual effort. *Id.* at 53. Although the parties have asserted facts in support of their positions, "whether Debtors have the annual income to fund a plan will be determined at the confirmation hearing." *In re Welch,* 74 B.R. 401, 405 (Bkrtcy.S.D.Ohio 1987).

Another requirement for chapter 12 relief is the debt limitation delineated in § 101(17)(A). Prudential indicates that it assumes, for purposes of this motion only, that Debtor can satisfy this requirement. However, Prudential reserves the right to raise this issue at a later date. Motion to Dismiss at 5, n. 2. The court will permit Prudential this opportunity if it discovers additional, admissible evidence.

Prudential lastly contends that Debtor did not receive more than 50% of his gross income from the farming operation as required by § 101(17)(A). Debtor filed his petition on December 31, 1987. Prudential contends that if Debtor had filed his petition one day later, he would fail to qualify for chapter 12 relief. Motion to Dismiss at 5, n. 2.

At the outset, it is noted that income is not defined in title 11, but it has been afforded a tax law meaning for chapter 12 eligibility. *Matter of Schafroth,* 81 B.R. 509 (Bkrtcy.S.D.Iowa 1987). Section 61(a) of title 26 defines gross income as "all income from whatever source derived."

The facts in *In re Shepherd,* 75 B.R. 501 (Bkrtcy.N.D.Ohio 1987), are analogous to those of the instant case. In *Shepherd,* Debtors filed their chapter 12 petition on December 31, 1986. Creditor, in its motion to dismiss, argued that because Debtors filed their petition on the last day of the year, congressional intent would be better served by considering 1986 for determination of Debtors' qualification under chapter 12. The court, in response to this argument, stated that:

> [i]t appears that the majority view holds that unless there is ambiguity, statutory construction and legislative history should not be used to alter the clear requirements of the statute. As there is no ambiguity in the definitional section, the court should use the Debtors' gross income from farming operations in 1985.

75 B.R. at 502 (citations omitted). *See also In re Bergmann,* 78 B.R. 911, 16 B.C.D. 747 (Bkrtcy.S.D.Ill.1987) (§ 101(17)) is clear on its face that only income from the taxable year preceding the filing of the petition is to be considered in determining whether Debtors meet the definition of family farmer and the court is without power to look beyond the face of the return.

Based on the foregoing discussion, this court shall consider Debtor's 1986 income tax return in resolving this issue. Debtor filed a joint 1986 income tax return. See Stipulation at 2, Exhibit B. That return shows wages, salaries and tips in the amount of $3,145.22. Debtor also had interest income of $1,890.63. Schedule F,

Farm Income and Expenses, is attached to this return and evidences gross farm income of $86,000.37. Farm deductions were subtracted from this amount and Debtor reported a farm loss of $14,568.59.

Gross income is computed without regard to those allowable deductions in determining taxable income. Debtor received $86,000.37 in gross income from the farming operation and $5,035.85 in nonfarm income. On the face of this return, it is obvious that Debtor received more than 50% of his gross income from the farming operation. *See Matter of Faber*, 78 B.R. 934, 16 B.C.D. 651 (Bkrtcy.S.D.Iowa 1987) (adjusted gross income is defined as gross income minus allowable deductions; thus, those items deducted from gross income in determining adjusted gross income are included in gross income). Although the 1986 income tax return is a joint return and Debtor has not filed a joint petition, the court is persuaded that, based on the record before it, Debtor is eligible for chapter 12 relief.

It is therefore

ORDERED that Prudential Insurance Company of America's motion to dismiss be, and it hereby is, denied. It is further

ORDERED that the confirmation hearing on Thursday, June 30, 1988 at 10:00 o'clock A.M., be held as scheduled.