### In re Carlos SNIDER, Wanda Snider, Debtors.

### Bankruptcy No. 2–88–04576.

United States Bankruptcy Court,
S.D. Ohio, E.D.

April 24, 1989.

See also, Bkrtcy., 50 B.R. 311.

Joseph A. Giampapa, Porter, Wright, Morris & Arthur, Columbus, Ohio, for Production Credit Ass'n.

Frank M. Pees, Worthington, Ohio, Chapter 12 Trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

### OPINION AND ORDER

R. GUY COLE, Jr., Bankruptcy Judge.

Debtors Carlos and Wanda Snider ("Debtors") have filed a motion to enlarge the time within which they may file a Chapter 12 plan of reorganization. Their only creditor, Production Credit Association of the Fourth District ("PCA"), opposes that request and has filed a motion to dismiss Debtors' case, asserting Debtors' ineligibility to qualify as Chapter 12 debtors under 11 U.S.C. § 109(f). PCA orally modified its motion at hearing to include a request that Debtors be barred from re-filing a bankruptcy case for at least 180 days. Debtors oppose PCA's motion. These contested matters were heard on April 4, 1989, following which post-hearing briefs were submitted.

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district. The matter at bar is a core proceeding which the Court may hear and determine in accordance with 28 U.S.C. § 157(b)(1) and (2)(A). The following Opinion and Order shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## I. *Findings of Fact*

1. Debtors initiated their Chapter 12 case by the filing of a joint petition on September 8, 1988. Debtors filed their schedules and statements on September 22, 1988.

2. Paragraph 2 of their Chapter 12 statement asserts the following:

"Income produced from operations – $34,300
Reported cash basis taxable income – $23,000"

3. Paragraph 3 of the same statement references non-farm income in the amount of $29,000.

4. Debtors' 1987 gross farm income, as shown on Schedule F (Farm Income and Expenses) of their 1987 federal income tax return, was $23,687.60. Debtors' non-farm wages, salaries and tips for 1987 amount to $29,910.60, as set forth on line 7 of their federal income tax return. Additionally, Debtors earned $123.38 in interest, $120.82 in dividends and $6.93 in net farm profit (line 18 which incorporates Schedule F). Thus, Debtors' 1987 adjusted gross income totaled $30,161.74. The $29,910.60 in non-farm income was earned by Carlos Snider from employment at a local Kroger supermarket.

5. Debtors admit that their gross farm income for federal income tax purposes was $23,687.60 in 1987. The $10,612.40 difference between "income produced from operations" ($34,300) set forth in their Chapter 12 statement and their taxable farm income ($23,687.60) as reported on the 1987 federal income tax return is the Debtors' attempted inclusion as income of the value of certain grain inventory in their possession when they filed their petition. This grain inventory was not sold or subject to any other disposition in 1987; it was held as inventory at the end of calendar tax year 1987 and used as livestock feed by Debtors in tax year 1988. Debtors knew when they filed their petition that $23,687.60 in taxable income for 1987 was insufficient to qualify them for Chapter 12 relief in 1988 because that amount was less than the $30,161.74 earned by Debtors in non-farm income.

6. The original deadline for filing a plan of reorganization under 11 U.S.C. § 1221

was December 7, 1988. Debtors requested an enlargement of time to January 6, 1989, within which to file their Chapter 12 plan. The additional time was solicited so that Debtors could determine available income from 1988 crops, off-farm earnings and the availability of drought relief assistance, all of which was asserted to be necessary for making accurate projections for purposes of constructing a proposed Chapter 12 plan.

7. The hearing on Debtors' enlargement motion was scheduled for February 21, 1989, but was continued pursuant to the parties' agreement. The order submitted by the parties to the Court recited that Debtors "may submit their Chapter 12 plan on or before March 15, 1989." It also noted that the filing of a plan did not constitute a waiver of PCA's right to object to the requested enlargement or a withdrawal of its motion to dismiss.

8. A plan of reorganization was filed by Debtors on March 21, 1989. It was not filed on or before March 15, 1989, due to counsel's illness.

## II. *Discussion*

PCA seeks dismissal of Debtors' case under 11 U.S.C. § 1208(c)(1) and (3), which provide:

(c) On request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter for cause, including—

(1) unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors;

. . . .

(3) failure to file a plan timely under section 1221 of this title; . . . .

PCA also asserts that Debtors are ineligible for relief by virtue of 11 U.S.C. § 109(f). Section 109(f) provides that: "[o]nly a family farmer with a regular annual income may be a debtor under Chapter 12 of this title." The term "family farmer" is defined by section 101(17)(A) of the Bankruptcy Code as:

[I]ndividual or individual and spouse engaged in a farming operation whose aggregate debts . . . arise out of a farming operation owned or operated by such individual or such individual and spouse,

*and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed; . . . .*

11 U.S.C. § 101(17)(A) (emphasis added). A "farming operation" includes "farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state." 11 U.S.C. § 101(20).

The parties agree that the Debtors' eligibility to seek relief in this Court as a family farmer must be measured by their gross income for 1987, the taxable year preceding the taxable year in which these cash-basis Debtors filed their case—*i.e.,* 1988. The parties dispute, however, whether the Debtors are eligible to seek relief under 11 U.S.C. §§ 101(17)(A), 101(20), and 109(f) based upon the Debtors' gross income for 1987. PCA argues that Debtors' gross income from farming must be measured by the gross income reported by Debtors on their federal income tax return. Because Debtors' taxable gross income in 1987 from their farming operation is less than their income from non-farming sources, PCA argues, they are ineligible for Chapter 12 relief in this case. Debtors assert that they should be entitled to include within the definition of gross income under § 101(17)(A) the value of certain grain inventory ($10,612.40) which they owned and stored on their premises at the end of 1987 and into 1988. As Debtors' argument goes, their farming efforts in 1987 produced the grain and, accordingly, it constitutes income, albeit not income subject to taxation. If the $10,612.40 is considered gross income from farming then Debtors received from their farming operation more than 50 percent of their gross income for 1987. According to PCA, Debtors have concocted their income argument from whole cloth; it is merely a desparate at-

tempt to gain eligibility under Chapter 12 where it does not otherwise exist.

The issues for determination involve the proper construction of § 101(17)(A) of the Bankruptcy Code. Specifically, what is properly included as gross income and what is included in that portion of gross income considered to be derived from a farming operation? Further, should Debtors be barred from filing another bankruptcy case for 180 days in the event the Court orders dismissal of this case?

■ The burden of proof in establishing eligibility for bankruptcy relief is on the party filing the petition. *In re Rott,* 73 B.R. 366, 371 (Bankr.D.N.D.1987). Thus, Debtors have the burden of establishing their eligibility to seek relief under Chapter 12. They have fallen far short of the mark.

■ The Court agrees with PCA's assessment of Debtors' argument. Debtors' assertion that unsold inventory is includable in Debtors' 1987 gross income for purposes of § 101(17)(A) is a model of disingenuity. This Court agrees with PCA that gross income as used in the Bankruptcy Code has, for the most part, the same meaning as in the Internal Revenue Code. *Matter of Wagner,* 808 F.2d 542, 547 (7th Cir.1986); *In re Shepherd,* 75 B.R. 501, 504 (Bankr.N.D.Ohio 1987); *In re Fogle,* 87 B.R. 493 (Bankr.N.D.Ohio 1988). Yet, the Court acknowledges that a strict tax code approach should be modified or abandoned in those cases in which a tax code solution would be absurdly irreconcilable with Chapter 12 and its legislative history. *See, Matter of Faber,* 78 B.R. 934, 935 (Bankr.S.D. Iowa 1987); *Matter of Schafroth,* 81 B.R. 509, 511 (Bankr.S.D.Iowa 1987).

Those courts which have modified the gross income test for purposes of § 101(17) have determined that the debtors received a monetary payment from general activities inherent in farming. *Matter of Armstrong,* 812 F.2d 1024, 1026 (7th Cir.1987) ("[W]hen a farmer sells some of his machinery in an effort to scale down his operation … and save the farm, the money received is inescapably from the 50% of the farming operation dissolved."); *In re Welch,* 74 B.R. 401 (Bankr.S.D.Ohio 1987) (agricultural program payments are farm income); *In re Shepherd,* 75 B.R. at 504 (the tax code definition of gross income is the accepted definition of gross income, but the court will also accept Internal Revenue Code Schedule F and its criteria for designating ordinary income as "farm" or "nonfarm").

Debtors' interpretation of gross income is patently meritless. It is ludicrous to suggest that the Debtors' unsold grain inventory constitutes gross income within the meaning of 11 U.S.C. § 101(17)(A). Such an argument defies common sense and its assertion represents a dangerous flirtation with the strictures of Bankruptcy Rule 9011.

■ The more difficult issue is whether the Debtor should be barred from filing a succeeding Chapter 12 case—as they have promised to do—in the event this case is dismissed. This is admittedly a close call for the Court, due principally to the Debtors' obvious ineligibility to qualify as Chapter 12 debtors based upon their gross income in 1987. Parenthetically, they claim that their gross income for 1988 will qualify them to file another Chapter 12 case in 1989 if this case is dismissed. The obvious question is whether they filed this petition on the eve of foreclosure in 1988 to "buy time" until they would qualify in the next tax year?

According to PCA, the petition was filed in bad faith for the sole purpose of stopping a scheduled foreclosure sale on Debtors' property. PCA argues that the petition should therefore be dismissed "with prejudice" under 11 U.S.C. § 109(g), *i.e.,* Debtors should be prohibited from filing another case for 180 days. In assessing the Debtors' *bona fides* in filing this petition the Court must, as PCA suggests, examine the totality of the circumstances. *Cf., Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah),* 836 F.2d 1030 (6th Cir.1988). In that regard, the Court notes that the Debtors were Chapter 13 debtors for a considerable period of time but were unable to successfully

complete their confirmed plan although they apparently submitted a significant sum of money to the trustee for distribution to their creditors. However, there is no indication that Debtors abused the bankruptcy process while under Chapter 13 protection. Plainly, Debtors filed their Chapter 12 case on the eve of PCA's foreclosure action; however, as further noted by PCA, such a filing, in and of itself, does not establish bad faith.

Under the facts presented, the Court is unable to conclude that Debtors filed the instant petition in bad faith. To the contrary, they appear to have a sincere intent to reorganize their financial affairs. Upon advice of counsel they pursued a novel, unsustainable approach to gain Chapter 12 eligibility in 1988. Indeed, Debtors could have easily filed a petition under Chapter 11 or 13 of the Bankruptcy Code—which have less rigid eligibility requirements— were they interested only in forestalling the judicial sale of the property. Having heard their testimony and considered the record as a whole, the Court cannot find that Debtors willfully violated any Court order, abused the bankruptcy process, or sought relief in bad faith such as to warrant a 180-day bar to a future filing. Moreover, Debtors have assets, an ongoing farming operation, and there is a reasonable probability that a plan will be confirmed. *See, Matter of Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir.1985). Accordingly, the Court cannot conclude, on the record before it, that an injunction against a future filing is warranted.

Based upon the foregoing, Debtors' Chapter 12 case is hereby DISMISSED, without prejudice, on the ground that the Debtors do not meet the aforedescribed eligibility criteria.

IT IS SO ORDERED.